DENVER & R. G. W. R. Co. v. INDUSTRIAL COMMISSION OF UTAH et al.

No. 4687.   Decided November 13, 1928.   (272 P. 239.)

*Van Cott, Riter & Farnsworth,* of Salt Lake City, for plaintiff.

*Harvey H. Cluff,* Atty. Gen., and *J. Robert Robinson,* Asst. Atty. Gen., for defendants.

## THURMAN, C. J.

On March 2, 1927, defendant Emanuel Sterzer was in the employment of the plaintiff, Denver & Rio Grande Western Railroad Company, a self-insurer under the Utah Industrial Act (Comp. Laws 1917, §§ 3061-3165). The nature of Sterzer's employment was that of helper to a bolt machine operator and on the date mentioned, while in the course of such employment, he met with an accident by which the third, fourth, and fifth digits of his left hand and from one-fourth to one-third of the palmar surface thereof was removed. Sterzer was totally disabled until May 20, 1927, at which time he was pronounced surgically healed. On or about May 23d he resumed work on the same job at the same rate of pay which was $24.48 a week, working 6 days a week. It appears from the evidence that after he returned to work he was able to perform the same kind of work as before the injury, except that he was unable to swing a sledge-hammer, but it also appears that that class of work was not necessary for a longer time than fifteen minutes per week. The jurisdictional facts are admitted. Two hearings were had before the commission, at which evidence was taken as to the extent of the injury and the percentage of permanent partial loss of function of the injured hand. Upon the evidence so taken, the commission made findings and entered an award thereon. Plaintiff seeks to set aside and annul the award on the ground that the findings are not sustained by the evidence, and that the award proceeds upon a wrong theory, and that the disability found by the commission is in excess of any amount supported by the evidence and was not within the discretion of the commission. The following finding of fact and conclusion of law are assailed by plaintiff on the grounds above stated:

"The Commission finds that applicant is surgically healed and that as a result of said injury he has lost by amputation the third, fourth and fifth digits of the left hand, including the metacarpals thereof to the proximal and carpal bones; that the thumb and index finger are intact, but that notwithstanding the thumb and index finger are

physically intact, the loss of the remaining digits and the greater part of the palmar surface of the hand render them of little value in an industrial sense, and that should he lose his job with his present employer his ability to secure employment would be restricted to approximately one-eighth of the ability which he enjoyed before this physical handicap occurred.

"From the foregoing findings, the Commission reaches the following conclusions of law:

"That therefore the Denver and Rio Grande Western Railroad Company should pay to the applicant Emanuel Sterzer for the permanent partial disability which he has sustained to his left hand by reason of the accident occurring while he was in the employ of said defendant, compensation based upon 87½% of the value of said hand at the wrist, or 131¼ weeks at $16.00 per week, making a total sum of $2,100.00, payable in installments monthly on the basis of $16.00 per week, and that all accrued payments from and after the date that he was discharged as surgically healed, to wit, May 20, 1927, down to date of this decision, should be paid in a lump sum to applicant forthwith."

The evidence upon which the findings were based is very brief. Dr. Linden, a physician on the staff of plaintiff railway company, examined the injured hand, and found that from one-fourth to one-third of the palmar surface was removed, and that, although three-fifths of the digits were removed, yet the remaining two (the thumb and index finger), were relatively more important than the three that were removed. He was of opinion that 60 per cent loss of function of the hand at the wrist was a liberal estimate. Dr. Allison, another physician, and a member of the staff of the plaintiff railroad company, was of the same opinion as to the percentage of loss.

Dr. Jack, a physician produced by the commission, testified that the injured hand was practically useless, and gave his opinion that the loss of function of the hand at the wrist was 95 per cent. On further examination, he stated, in effect, that that was his judgment if Sterzer was not working for the plaintiff railroad company and was competing for labor in the labor market. At a later hearing, Dr. Jack testified, in effect, that, if Sterzer should continue in the same occupation and be assured of a position for the rest of

his life, his disability would not be 95 per cent. In that case it should be reduced to 70 per cent. Prior to the giving of this testimony, it was explained to the witness that, since the injury, Sterzer had returned to his job and had shown efficiency almost equal to that before the injury, and that his foreman had testified that Sterzer was 90 per cent efficient as helper to a bolt machine operator. The foreman had testified to that effect.

Such, in substance, are the main features of the evidence upon which the commission apparently made its findings.

The first contention made by the plaintiff is that there is no evidence to sustain the findings of the commission that the ability of Sterzer to secure employment is reduced to about one-eighth of the ability which he enjoyed before the physical handicap occurred. In support of this contention, plaintiff refers us to testimony, not included in our statement of the case, to the effect that, other things being equal, an employer would probably perfer a man who was not crippled. Plaintiff also refers to the testimony of the foreman to the effect that he would rather employ a man that took an interest in his work and would try to make it safe for himself and others, even if he had a crippled hand, than to employ a man with two good hands, if he was careless and unsafe. But the principal objection urged in this connection is that the commission proceeded upon an erroneous and improper theory, and found disability in excess of the amount within its discretion and not supported by evidence. This, it is contended, appears from the fact that two of the physicians who testified determined the loss of function of the hand at the wrist to be only 60 per cent, while the other physician gave it as his opinion that the loss was only 70 per cent. It is contended that there is no evidence in the case that estimates the loss as high as 87½ per cent.

We are of opinion that this contention is correct as far as concerns the testimony given by the witnesses. Dr. Jack, during his first examination, estimated the loss to be 95 per cent but that appears to have been based upon the in-

ability of Sterzer to compete for labor in the labor market. With that factor eliminated, the witness afterwards estimated the loss of function at 70 per cent.

In determining the percentage of loss of function of an injured member of the body, the statute which specifically allows compensation for such loss should be first considered. Compiled Laws of Utah 1917, § 3138, as amended in Session Laws 1919, c. 63, among other things, provides compensation to the injured workman for the loss of a hand at the wrist 60 per cent of his average weekly wages, not exceeding $16 per week, for a period of 150 weeks. The section also provides compensation for the entire loss of other members of the body, but such provisions are not material here. It is then provided in the same section that:

"Any other disfigurement, or the loss of bodily function not otherwise provided for herein, such period of compensation as the Commission shall deem equitable and in proportion to compensation in other cases not exceeding 200 weeks."

The instant case, being for an injury to the hand rather than for an entire loss of it, is controlled by the terms of the provision last quoted; that is, the "period of compensation" must be "equitable and in proportion to compensation in other cases not exceeding two hundred weeks."

In order to determine the period of compensation under that provision of the statute, the practice has been to ascertain first the percentage of loss of function of the injured member. When that is ascertained, the period of compensation can be mathematically determined. The injured employee is entitled to compensation in proportion to what he would have received under the schedule if he had lost the member entirely. Obviously that appears to be the rule contemplated by the statute. The term "other disfigurement" appearing in the statute does not seem to have any practical significance. There is unquestionably a disfigurement when the hand is entirely lost and when the Legislature allowed, for such injury, com-

pensation for 150 weeks it must be assumed that it took into consideration disfigurement as well as loss of function. So in the case of a partial injury where only a proportion, based upon percentage, is allowed, it must be assumed the period of compensation so allowed was intended to cover disfigurations as well as loss of function.

We are of opinion that the finding of the commission of which plaintiff complains and which constitutes the basis of the award was founded upon an erroneous theory. It was not based upon the theory that there was a loss ∎ of function of the hand, but upon the theory that "his ability to secure employment would be restricted to approximately one-eighth of the ability which he enjoyed before the physical handicap occurred." Proceeding upon that theory, the commission found as a conclusion of law that the plaintiff should pay the defendant Sterzer compensation on the basis of a loss of 87½ per cent of the value of the hand at the wrist which, according to the calculation made by the commission, amounted to 131¼ weeks at $16 per week. Even upon the theory adopted by the commission, there is a discrepancy in the calculation. Sterzer's weekly wages were $24.48, 60 per cent of which would be only $14.688 per week instead of $16 awarded by the commission. This, however, is of but minor importance. The important question is the erroneous theory upon which the finding was predicated. But defendants contend that the finding complained of was nevertheless right and should not be disturbed merely because the commission may have given a wrong reason for its conclusion. We are familiar with the rule that a correct decision is not vitiated because an erroneous reason is given therefor. But that rule has no application to the question presented here. In this case the reason given for the finding appears to be the only basis for the finding. If the basis is wrong, the finding must be wrong. There appears to be no basis whatever for the finding in question except one founded upon an erroneous theory.

Plaintiff has cited the following Utah cases in support of its contention: *Broderick* v. *Ind. Comm.*, 63 Utah 210, 224 P. 876; *Aetna Life Ins.* v. *Ind. Comm.*, 64 Utah 230, 228 P. 1081; *Vukelich* v. *Ind. Comm.*, 62 Utah 486, 220 P. 1073. An extended review of these cases is unnecessary. It is sufficient to say each of them is a case in which an erroneous theory was sought to be applied in arriving at the amount of compensation for the injury. In each of them the erroneous theory was rejected here and the correct theory announced by the court.

In view of the statute to which we have referred, we are compelled to hold that the theory upon which the commission fixed the compensation of the defendant Sterzer was contrary to law and not within the discretion of the commission. It follows, therefore, that the findings of fact do not support the award, and for that reason the award is annulled and set aside. We, however, do not hold that the evidence before the commission, including their own view of the injured member, was insufficient. That is a question for the commission to determine.

The cause is therefore remanded to the commission for further proceedings within the limit of their jurisdiction.

CHERRY, STRAUP, HANSEN, and GIDEON, JJ., concur.