## BETHLEHEM-SPARROWS POINT SHIPYARD, INC. *v.* JAMES DAMASIEWICZ

[No. 40, October Term, 1946]

*Decided January 9, 1947.*

The cause was argued before MARBURY, C. J., DELA-PLAINE, COLLINS, GRASON, HENDERSON, and MARKELL, JJ.

*Jesse Slingluff, Jr.*, and *John S. Bainbridge,* with whom were *Marbury, Miller & Evans* on the brief, for the appellant.

*Maurice J. Pressman* for the appellee.

Submitted on brief by *Richard W. Emory* and *Venable Baetjer & Howard, amicus curiae.*

DELAPLAINE, J., delivered the opinion of the Court.

Bethlehem-Sparrows Point Shipyard, Inc., is appealing here from a judgment of the Court of Common Pleas of Baltimore City reversing a decision of the State Industrial Accident Commission, which allowed only one of three parts of the compensation claim of James Damasiewicz, age 40, a resident of Westminster, employed as a carpenter at the shipyard at Sparrows Point. The accident occurred on August 21, 1944, when the employee was caught between two moving cranes. He sustained bruises on his hips and a deep laceration along the upper part of his right thigh. On September 20, 1944, he was awarded compensation for temporary total disability at the rate of $23 per week. At a hearing before the Commission on June 15, 1945, after his wound had healed and he was able to return to work, he claimed compensation for permanent partial disability consisting of (1) partial loss of use of the right leg caused by atrophy of the muscles, (2) disfigurement of the right leg, and (3) hernia. The Commission found only that he had a permanent partial disability consisting of 20 per cent loss of use of his right leg, and awarded him compensation for 42⅖ weeks at the rate of $18 per week.

As the Commission refused to award compensation for disfigurement and hernia, the claimant appealed to the Court of Common Pleas. Dr. Floyd E. Shaffer, shipyard surgeon, who sutured and dressed his wound, and Dr. John V. Hopkins, who examined him in April, 1946, expressed the opinion that the disability of the leg was between 10 and 15 per cent. On the other hand, Dr. Albert R. Wilkerson, a specialist in traumatic surgery, estimated that the disability is 25 per cent. The disfigurement, for which the claimant asks compensation, is a deep scar about an inch and a half long and about three-fourths of an inch wide. Dr. Wilkerson said that he examined the claimant a number of times, and on the last examination in May, 1946, the muscles were still separated, and when he palpated the scar he could feel the thigh bone in the depression.

The attorneys for the employer excepted because the trial judge refused to allow them to show that Dr. Blake, medical adviser and examiner of the State Industrial Accident Commission, had made a report of his examination of the claimant prior to the award. We cannot find any merit in this objection. Where the medical adviser and examiner has examined a claimant and has reported to the Commission, and the report is contained in the record, the trial judge on appeal from the Commission should not allow the report to be read to the jury if the report was not presented at a public hearing and the claimant was not afforded an opportunity to cross-examine the medical adviser and examiner. *Dembeck v. Bethlehem Shipbuilding Corp.*, 166 Md. 21, 170, A. 158. If such a report is in the record, justice requires that any of the parties should be afforded the opportunity to show that the information therein is in fact not true. In the case at bar, however, no such report was in the record. If such a report is not admissible in evidence, it is not admissible to show that the Commission may have considered such a report without offering it in evidence at the hearing before it.

It was undisputed in the court below that the claimant sustained an accidental injury arising out of and in

the course of his employment resulting in a permanent partial disability. The objections were to the issues submitted to the jury. The following five issues were submitted by the trial judge:

(1) Is the permanent partial disability of the claimant's right leg greater than 20 per cent loss of use as a result of the accidental injury?

(2) If the answer is Yes, then what is the percentage of permanent loss of use of the right leg?

(3) Does the claimant have a hernia in his right side as a result of the accidental injury * * * ?

(4) Does the claimant have any permanent disfigurement or mutilation of his right leg as a result of the accidental injury?

(5) If the answer is yes, then what number of weeks of compensation (not less than 10 nor more than 100) is he entitled to receive therefor?

The jury answered the issues as follows: (1) Yes, (2) 25 per cent, (3) Yes, (4) Yes, (5) 15 weeks. In other words, the jury found that the permanent loss of use of the claimant's right leg is 25 per cent; that the claimant's hernia is the result of the injury; and that the claimant has a permanent disfigurement of the leg, for which he is entitled to compensation for 15 weeks. The Court accordingly entered judgment reversing the order of the Commission.

We agree with the employer that the first and second issues did not submit the question of degree of permanent partial disability in the proper manner. In a case like this, where permanent partial disability is conceded, the issue should request the jury merely to determine the percentage of the disability. The jury in the court below should have had the unqualified right to determine the percentage whether less or greater than 20 per cent. Instead, the first issue implied that the loss of use is at least 20 per cent. However, the jury determined the loss to be 25 per cent, and we do not find on this record that the error was prejudicial, and therefore there is no need to have a new trial because of the first and second issues.

The third issue, relating to the hernia, was not objected to on this appeal.

The fourth issue, relating to disfigurement, has provoked the main controversy. In some States, as in Massachusetts, there is no express provision for disfigurement. *Fennell's Case*, 289 Mass. 89, 193 N. E. 885. Other States, including New York and Pennsylvania, compensate for disfigurements to the face and head; Illinois compensates for disfigurements to the face, head, neck and hands; Wisconsin for disfigurements to face, head, neck, hands and arms. The Maryland Act does not specify any particular part of the body for which compensation may be awarded for disfigurement. The Act provides that in case of disability partial in character but permanent in quality, the compensation shall be 66⅔ per cent of the average weckly wages, and the period during which compensation shall be allowed is prescribed in the schedule. In 1944, when the injury was sustained, the Act provided that the weekly payments should not be more than $18 per week, and the compensation should not exceed $3,816 in the aggregate. The Legislature subsequently amended the Act by raising the weekly payments to a maximum of $20, and the aggregate compensation to a maximum of $4,240. Laws of 1945, Ch. 336. The schedule prescribes that the weekly payments for loss of a leg shall be paid for 212 weeks. In case of amputation or loss of use of any part of any member of the body, for which compensation is not specifically provided, compensation shall be allowed for such proportion of the total number of weeks allowed for the whole member as the affected or amputated portion bears to the whole. Then follows the disfigurement provision. When the Workmen's Compensation Act was adopted by the Legislature in 1914, it contained no provision for compensation for disfigurement. Laws of 1914, Ch. 800. It was not until 1920 that this provision was inserted. Laws of 1920, Ch. 456. The provision, which remains exactly as it was written in 1920, provides: "For other mutilations and disfigurements, not hereinbefore provided for, compensation shall be

allowed in the discretion of the Commission, for not less than ten weeks nor more than one hundred weeks, as the Commission may fix, in each case having due regard to the character of the mutilation and disfigurement as compared with mutilation and injury hereinbefore specifically provided for." Code, Supp. 1943, Art. 101, Sec. 48(3).

The Legislature, in conferring broad discretion upon the State Industrial Accident Commission in making awards for disfigurements, evidently recognized the impracticability of measuring disfigurements like other disabilities. Judge Cardozo said on this subject: "Some injuries, as for instance the loss of a limb, may be so defined and classified that the appropriate compensation may, with a fair average of justice, be estimated in advance. But cases of disfigurement have their special problems. It is difficult, if not impossible, to define and classify the injuries. A flexible compensation makes for justice alike to employer and to workman." *Sweeting v. American Knife Co.*, 226 N. Y. 199, 123 N. E. 82, 83, affirmed *American Knife Co. v. Sweeting*, 250 U. S. 596, 40 S. Ct. 44, 63 L. Ed. 1161. The general purpose of the Workmen's Compensation Act is to provide compensation for loss of earning capacity resulting from accidental injuries sustained in industrial employment. The Legislature of Maryland, in adopting the Act, recognized that the prosecution of various industrial enterprises occasions injury to large numbers of workmen "Resulting in their partial or total incapacity or death." Laws of 1914, Ch. 800. It is also recognized that a disfigurement may constitute an economic loss in the sense of diminished power to produce, and it may be as much part of the workman's loss as the loss of a limb. A serious and unnatural disfigurement of the face, for example, may very probably have a harmful effect upon the ability of the disfigured person to retain or secure employment. Such a disfigurement, aside from exceptional cases, may render the person repulsive or offensive to the sight and displeasing to his employer, fellow employees and customers. *Wilson v. Brown-McDonald*

*Co.,* 134 Neb. 211, 278 N. W. 254, 116 A. L. R. 702; *Arizona Copper Co. v. Hammer,* 250 U. S. 400, 39 S. Ct. 553, 63 L. Ed. 1058, 6 A. L. R. 1537. Of course, there may be individual instances which do not impair earning capacity, but in the majority of cases disfigurement sooner or later may have a harmful effect; and the lawmakers who enact compensation statutes must deal with general tendencies

The Maryland Legislature has conferred upon the Industrial Accident Commission discretion to determine whether a claimant has suffered such bodily disfigurement as entitles him to workmen's compensation. The Commission may award compensation for disfigurement even though the claimant has not shown that it diminishes his earning capacity. *Erickson v. Preuss,* 223 N. Y. 365, 119 N. E. 555; *Simon v. Maryland Battery Service Co.,* 276 Pa. 473, 120 A. 469; *Frank W. Williams Co. v. Industrial Commission,* 303 Ill. 352, 135 N. E. 758; *Beal v. El Dorado Refining Co.,* 132 Kan. 666, 296 P. 723. We hold that the Court on an appeal from the Commission has no power to exercise discretion in a claim for disfigurement by reviewing the findings of fact. *Murdaugh v. Robert Lee Construction Co.,* 185 S. C. 497, 194 S. E. 447, 452. The Court cannot disturb the Commission's decision except to correct an abuse of discretion. In the case before us the claimant unquestionably has a disfigurement of the leg. "Disfigurement" is defined as that which impairs or injures the beauty, symmetry or appearance of a person or thing; that which renders unsightly, misshapen or imperfect, or deforms in some manner. *Superior Mining Co. v. Industrial Commission,* 309 Ill. 339, 141 N. E. 165. However, to justify an award under the disfigurement provision of the Workmen's Compensation Act, there must be an outward observable scar or mutilation which tends to mar the appearance of the body. *Branham v. Denny Roll & Panel Co.,* 223 N. C. 233, 25 S. E. 2d 865. For illustration, a puncture of the eardrum might result in serious injury, and yet not constitute a disfigurement within the contemplation of the Act.

In this case the disfigurement of the claimant's leg is not ordinarily exposed to view. It has been held by the Supreme Court of Errors of Connecticut that the purpose of the Connecticut Legislature, in placing disfigurement of the face, neck and hands in a separate compensable class, was to compensate for disfigurement of certain portions of the body which are ordinarily exposed. *Finoia v. Winchester Repeating Arms Co.,* 130 Conn. 381, 34 A. 2d 636. Our Act is different therefrom in that it does not specify any portion of the body for which disfigurement compensation may be awarded. On this appeal, however, we do not decide whether a disfigurement of the leg can ever be compensable. For in this particular case the disfigurement is plainly not within the purview of the Act. The Legislature, in providing for compensation for "Other mutilations and disfigurements, not hereinbefore provided for," intended to make compensable other injuries which are similar to amputation or loss of use of members of the body specified in the schedule in so for as they are permanent and their degree and consequences can be ascertained. We construe the provision to mean that where an employee receives two injuries, one of which disables and the other disfigures, he may receive compensation for both the disability and the disfigurement; but where an employee is disabled and disfigured by the same injury, he is not entitled to receive compensation for both disability and disfigurement. *Indiana Central Coal Co. v. Meek,* 93 Ind. App. 9, 177 N. E. 332; *Wells Bros. Co. v. Industrial Commission,* 285 Ill. 647, 121 N. E. 256; *Chicago Home for the Friendless v. Industrial Commission,* 297 Ill. 286, 130 N. E. 756; *International Coal & Mining Co. v. Industrial Commission,* 293 Ill. 524, 127 N. E. 703, 10 A. L. R. 1010; *Stubbs v. Industrial Board,* 280 Ill. 208, 117 N. E. 419; *Smith-Lohr Coal Mining Co. v. Industrial Commission,* 291 Ill. 355, 126 N. E. 164. In this case the disability and the disfigurement were caused by a single injury. The claimant was awarded compensation for temporary total disability and permanent partial disability. We hold that he is not entitled

to compensation for disfigurement from the same injury. Certainly it was never the Legislature's intention that a claimant, who is awarded compensation for 212 weeks allowed for loss of the entire leg, can receive further compensation for disfigurement from that loss. We see no reason to hold that the Legislature intended a different construction in case of an employee who has been awarded compensation for a partial disability of the leg. In Nebraska, where a lineman who fell from a pole sustained an injury to his left thigh bone, as a result of which his left leg was shortened at least one inch and his knee and ankle became stiff and incapable of normal motion, the Court held that the compensation for permanent loss of use of the leg, unaccompanied by any other physical injury or loss of health, could not exceed the amount designated in the schedule. *Hull v. United States Fidelity & Guaranty Co.*, 102 Neb. 246, 166 N. W. 628. Likewise in Utah, where an employee lost between 60 and 70 per cent. of the use of his left hand, but was allowed compensation for a loss of 87½ per cent., the Court declared that the Industrial Commission had exceeded its authority, because no additional compensation could be awarded under the provision for "any other disfigurement, or the loss of bodily function not otherwise provided for herein." *Denver & Rio Grande Western R. Co. v. Industrial Commission of Utah*, 73 Utah 86, 272 P. 239, 241.

The fifth issue was likewise improper. On the hearing of an appeal from a decision of the State Industrial Accident Commission, the Court, upon motion of either party, is required to submit to a jury the question of fact involved in the case. Code, 1939, Art. 101, Sec. 70, *Spencer v. Chesapeake Paperboard Co.*, 186 Md. 522, 47 A. 2d 385. But the amount of compensation for disfigurement is not a question of fact to be submitted to the jury. On an appeal from the Commission it is not within the province of the jury to make an award for any amount or to fix the rate or period of compensation. *Schiller v. Baltimore & Ohio R. Co.*, 137 Md. 235, 242, 112 A. 272; *Townsend v. Bethlehem-Fairfield Shipyard,*

484

186 Md 406, 47 A. 2d 365, 371; *Bethlehem Steel Co. v. Ziegenfuss,* 187 Md. 283, 49 A. 2d 793.

For these reasons we must reverse the judgment of the trial court so far as it relates to the fourth and fifth issues.

> *Judgment reversed, and case remanded for further proceedings in accordance with this opinion, with costs to appellant.*