691 A.2d 685

**Mary F. HUNDT,**

v.

**MAYOR AND CITY COUNCIL OF BALTIMORE.**

**No. 21 Sept. Term, 1996.**

Court of Appeals of Maryland.

March 13, 1997.

Reconsideration Denied May 2, 1997.

Mark Herman, Baltimore, for Appellant.

David B. Allen, Acting Associate Solicitor; Herbert Burgender, Jr., Principal Counsel (Neal M. Janey, City Solicitor; Stanley C. Rogosin, Associate Solicitor, all on brief), Baltimore, for Appellee.

Argued before BELL, C.J., and ELDRIDGE, RODOWSKY, CHASANOW, KARWACKI, RAKER and WILNER, JJ.

WILNER, Judge.

The Circuit Court for Baltimore City, on summary judgment, affirmed findings by the Workers' Compensation Commission that (1) on September 28, 1992, while working as a volunteer school aide for the Baltimore City School System, appellant sustained an accidental injury arising out of and in the course of her employment when she slipped on the cafeteria floor and injured her left knee, (2) as a result of that injury, she suffered a permanent partial disability, (3) pursuant to Maryland Code, § 6–107(d) of the Education article and § 9–226(a) of the Labor and Employment article, she was a "covered employee" under the Workers' Compensation Law and was therefore entitled to the payment of medical expenses arising from the injury, but (4) because, as an unpaid volunteer, she had no average weekly wage, she was not entitled to weekly monetary benefits.

The only issue in this appeal is whether the court was correct in its last conclusion.[1]   Appellant contends that, notwithstanding that she had no average weekly wage, she is nonetheless entitled to minimum benefits of $50/week pursuant to Labor and Empl. art., § 9–626(a).   Section 9–626 provides in relevant part:

"(a) Except as provided in subsection (b) of this section, a covered employee who is entitled to compensation under this subtitle for a permanent partial disability shall receive minimum weekly compensation of $50.

(b) If the covered employee has an average weekly wage of less than $50 at the time of the accidental personal injury ... the covered employee shall receive minimum compensation that equals the average weekly wage of the covered employee."

Appellant's argument is quite simple.   She is a covered employee and is therefore entitled to compensation; she did not have an average weekly wage of less than $50 and, for that reason, her case did not fall under § 9–626(b); *ergo,* it falls under § 9–626(a).

The argument, though simple to state, overlooks the context and development of § 9–626 as well as its plain wording.

The Workers' Compensation Act has undergone many changes since its initial enactment in 1914, but at least four features have remained constant with respect to accidental personal injuries arising out of and in the course of employment.   The first is the recognition of four kinds of compensable disability that can result from such injuries:   temporary partial, temporary total, permanent partial, and permanent total.   The second constant feature is the provision of two principal kinds of benefits to be paid by the employer:   weekly

---

1.   Prior to the finding of a permanent partial disability, appellant was found to have sustained a temporary total disability.   She did not seek weekly monetary benefits for the temporary disability, and her entitlement to such benefits is not an issue in this appeal.

cash benefits and medical expenses.[2] Third, since its inception, the law has pegged weekly cash benefits for three of the four disability categories—temporary total, permanent partial, and permanent total—to the amount of "average weekly wage" earned by the claimant at the time of the injury. Finally, as a fourth constant, since 1914 the law has provided a minimum weekly benefit with respect to total disabilities, and since 1920 it has provided a minimum weekly benefit with respect to permanent partial disability.

In the original enactment, an employee was entitled, for a total disability, whether permanent or partial, to 50% of his or her average weekly wage, not to exceed $12/week and an aggregate of $5,000. 1914 Md. Laws, ch. 800, § 35. The statute also provided a minimum payment of $5/week "unless the employe's [*sic*] established weekly wages are less than five dollars per week at the time of the injury, in which event he shall receive compensation in an amount equal to his average weekly wages...." *Id.* In the case of a permanent partial disability, the employee was to receive 50% of his or her average weekly wage, not to exceed $12/week and an aggregate maximum of $3,000, in accordance with a schedule set forth in the statute. Unlike the situation of a total disability, no minimum weekly payment was prescribed for a partial disability.

The provision for medical payments, stated in § 36 of the 1914 Act, was not based on average weekly wages but was for services rendered to the employee as required by the Commission, subject to a maximum of $150.

In 1920, the Legislature added a minimum weekly benefit provision with respect to cash payments for permanent partial disability, similar to that included in the 1914 Act with respect

---

2. Since 1914, in the section requiring employers to pay medical benefits, the law also required them to pay part of the funeral expenses of the employee if the employee died within a certain period of time after the accident. In 1968, the Legislature added a third category of benefits—vocational rehabilitation. *See* 1968 Md. Laws, ch. 744; Labor and Empl. art., §§ 9–670 through 9–675.

to total disabilities. 1920 Md. Laws, ch. 456. It set the weekly benefit at two-thirds of the average weekly wage, subject to a maximum of $18/week and an aggregate of $3,750, with a minimum of $8/week "unless the employee's established weekly wages are less than eight dollars per week at the time of the injury, in which event he shall receive compensation equal to his full wages."

Over the years, the amounts and percentages have changed, but the basic format has not. For a permanent total disability, a covered employee is now entitled to weekly cash benefits in the amount of two-thirds of his or her average weekly wage, not to exceed the amount of the State average weekly wage or be less than $25.[3] Labor and Empl. art., § 9–637. If the employee's average weekly wage is less than $25, the employer is directed to pay benefits equal to the employee's average weekly wage. § 9–637(a)(2).

The amount of cash benefits payable for permanent partial disability depends on the nature of the disability. Section 9–627 contains a schedule establishing the number of weeks for which compensation is to be paid for various kinds of injuries. If compensation is awarded for fewer than 75 weeks, the employee receives benefits in the amount of one-third of his or her average weekly wage, not to exceed $94.20. § 9–628(d). If compensation is awarded for at least 75 weeks but fewer than 250 weeks, the employee receives benefits equivalent to two-thirds of his or her average weekly wage, but not more than one-third of the State average weekly wage. § 9–629. If compensation is awarded for 250 weeks or more, the weekly benefit is in the amount of two-thirds of the employee's average weekly wage, not to exceed 75% of the State average weekly wage. § 9–630.

Section 9–626, which is at issue here, applies only to permanent partial disability. It mirrors, however, the provision in

---

**3.** The use of a State average weekly wage as an alternative cap on weekly monetary benefits came about in 1968 with regard to temporary total disability. *See* 1968 Md. Laws, ch. 743. It was applied to permanent total disability in 1971. *See* 1971 Md. Laws, ch. 404.

§ 9–637(a) applicable to permanent total disability and the provision in § 9–621(a) applicable to temporary total disability. Compensation for permanent partial disability is set at two-thirds of the employee's average weekly wage, with a minimum of $50 unless the average weekly wage is less than that. If it is, the employee receives the full amount of his or her average weekly wage.

As to each of these categories, then, the Legislature has crafted a scheme of paying the employee weekly cash benefits equivalent to a percentage of the employee's average weekly wage unless that wage falls below a minimum amount, in which case the employee receives the full amount of his or her average weekly wage. The only exception to this approach is temporary partial disability, for which the employee is compensated only if the disability causes his or her wage-earning capacity to decrease, in which event the employee receives 50% of the difference between his or her average weekly wage and his or her wage-earning capacity while temporarily partially disabled. § 9–615. No minimum benefit is provided for that kind of disability.

The original 1914 Act covered only employees engaged in "extra-hazardous" employment. In § 32, it enumerated 41 specific categories of such employment plus a catch-all of "all extrahazardous employments not specifically enumerated herein." In § 62, the law defined "employe [sic]" as a person engaged in extrahazardous employment in the service of an employer conducting business upon the premises but specifically excluded from that definition farm laborers, domestic servants, blacksmiths, wheelwrights, and other rural employees. The law did not, in either section, expressly include, exclude, or even mention volunteers.

In 1970, the Legislature combined the inclusions and exclusions into one section—§ 21 of art. 101. Section 21(a) dealt with employers; § 21(b) set forth the categories of employees who were covered under the Act; and § 21(c) enumerated the categories of employees who were "exempt" from coverage. Although nothing explicit was said about volunteers being

covered or not covered, § 21(b)(4) provided, among other things, that members of volunteer fire and police departments were to be regarded as employed by the political subdivision where the department was located and "regularly enrolled volunteer member[s] or trainee[s]" of the civil defense corps were to be regarded as employed by the State. 1970 Md. Laws, ch. 741. Whether that attribution actually made them covered employees is not clear, either from the text of the statute or from its title, although there is at least a fair implication that, by mentioning them in § 21(b), the Legislature intended that they be covered.

In 1971, the Legislature attempted, in yet another rewriting of § 21, to clarify the status of those persons. Persons in the service of political subdivisions and their agencies "under any contract of hire," as well as elected and appointed officials, were already included as covered employees under § 21(b). By 1971 Md. Laws, ch. 733, the Legislature added to the list of *exempt* categories in § 21(c) members of volunteer police and fire departments, non-salaried members of boards and commissions, volunteer civil defense members or trainees, and "volunteer workers for agencies or departments of political subdivisions" in 12 counties. When coupled with what already existed in § 21(b), it would seem that, in limiting those exemptions to the 12 listed counties, the Legislature, at least implicitly, intended to include as covered employees those categories of persons in Baltimore City and the other 11 counties.

In 1972 the General Assembly first made volunteer aides working in the public school systems covered employees. It accomplished that result by adding a new § 112A to art. 77 of the Code—the article then devoted to public education—authorizing the local boards of education to use volunteer aides in school activities and declaring those aides to be agents of the local board for the purpose of comprehensive liability insurance coverage "and for purposes of workman's compensation coverage under section 21 of article 101." 1972 Md. Laws, ch. 220. At the time, it neglected to amend art. 101, § 21(b) to include those persons but effected their coverage solely through the amendment to art. 77. That omission was

corrected in 1991 as part of the Code Revision Labor and Employment article. *See* Labor and Empl. art., § 9–226;[4] 1991 Md. Laws, ch. 8.

The pegging of weekly cash benefits to the employee's average weekly wage works without difficulty as to paid employees, for they all have an average weekly wage in some amount to which the appropriate formula can be applied. When various categories of unpaid volunteers were added as covered employees, however, the problem we now face was created. There is no doubt that they are entitled to the medical benefits provided for in §§ 9–660 and 9–661, for those benefits are available to covered employees without regard to average weekly wage. The question is whether the Legislature intended to provide them with weekly cash benefits as well and, if so, on what basis.

As noted, coverage for volunteer school aides came about in 1972. The General Assembly did not record legislative history or even retain its bill files at that time, and we are therefore unable to determine whether any actual thought was then given to the question. The same lapse appears with respect to the other categories of volunteers added as covered employees. We may presume that the 1972 Legislature was aware that weekly cash payments for all but temporary partial disability benefits were based on the employee's average weekly wage, as the section containing those provisions (§ 36 of art. 101) was not only amended in that same 1972 session but had been amended in each of the five preceding sessions as well. It may fairly be inferred, then, that, by making no provision for weekly cash benefits for those volunteers, the Legislature was content to have only their medical expenses covered.

---

4. The Legislature intended to correct the omission apart from the Code Revision bill. It passed another bill in that session, 1991 Md. Laws, ch. 329, amending art. 21, § 21(b) to include those volunteers but, aware of the pendency of the Labor and Employment article containing the same provision, provided that ch. 329 would be void if the Code Revision bill was enacted.

We need not rest on an inference from silence in 1972, however. In 1991, when the Code Revision Labor and Employment article was presented to the Legislature, the Department of Legislative Reference called specific attention to the gap. In its comment on § 9–602, defining and providing for the calculation of an employee's average weekly wage, the Department noted:

"Proposed § 9–602 provides for the computation of the average weekly wage of a covered employee. Sections 6–107 and 6–108 of the Education Article provide workers' compensation coverage for volunteer aides and student teachers and interns. However, those sections do not provide for the average weekly wage to be used in computing benefits. The General Assembly may wish to consider providing an average weekly wage for volunteer aides and student teachers and interns."

*See Report On House Bill 1,* Dep't of Legisl. Ref., Jan. 14, 1991, at 39.

Notwithstanding that advice, the General Assembly chose not to establish an average weekly wage, or method of imputing one, for school volunteers, as it had previously done for volunteer fire and rescue company personnel, handicapped students, and volunteer deputy sheriffs in Cecil County. *See* Labor and Empl. art., § 9–602(d), (g), and (j).

Section 9–626 and its counterparts in §§ 9–621 and 9–637 have a clear and rational meaning and purpose when applied to paid employees. If the employee's average weekly wage is less than $50, the employee is entitled to benefits equal to the full amount of his or her average weekly wage. If the employee's average weekly wage is $50 or more, the statute assures that he or she will receive at least $50. Were it not for that provision, the employee would receive only one-third or two-thirds of his or her average weekly wage, depending on whether the benefits are to extend for more than 75 weeks, and, in either event, that could produce an amount less than

$50.[5]

The net effect and sole purpose of § 9–626(a) is to assure than an employee having an average weekly wage of between $50 and $75 or $150 (depending on whether the benefit is pegged at one-third or two-thirds of his or her average weekly wage) is not treated worse than an employee having an average weekly wage of less than $50. To apply it to a volunteer having no average weekly wage would create the anomaly of an unpaid person receiving greater benefits than a paid employee earning less than $50/week. There is nothing in any of the legislative history of the statute, since its inception in 1914, suggesting such a purpose or intention by the Legislature, and we can find no basis for giving the statute such a strained reading. Treating it as applicable only to employees having an actual average weekly wage does not produce any absurd result, as appellant contends, but is consistent with the very rationale for providing weekly cash benefits—to compensate employees "for loss of earning capacity resulting from accidental injuries sustained in industrial employment." *Bethlehem–Sparrows Shipyard, Inc. v. Damasiewicz,* 187 Md. 474, 480, 50 A.2d 799, 802 (1947). *See also Tortuga, Inc. v. Wolfensberger,* 97 Md.App. 79, 83, 627 A.2d 56, 58 (citing *Cox v. American Store Equip. Corp.,* 283 F.Supp. 390, 394 (D.Md.1968)), *cert. denied,* 332 Md. 703, 632 A.2d 1209 (1993); RICHARD P. GILBERT AND ROBERT L. HUMPHRIES, MARYLAND WORKERS' COMPENSATION HANDBOOK § 9.0–2 (2d ed. 1993).

It is entirely reasonable to infer that, when the Legislature made these unpaid volunteers covered employees, it intended only that they be eligible for non-income based benefits in the event of on-the-job injuries.[6]

---

**5.** If, for example, the employee had an average weekly wage of $60, but for § 9–626(a), he or she would receive benefits of only $40 if the benefits were to extend beyond 75 weeks, and only $20 if the benefits were for less than 75 weeks.

**6.** In addition to traditional medical, surgical, hospital, prosthetic devices, and nursing benefits provided for in § 9–660, § 9–661 requires

JUDGMENT AFFIRMED; APPELLANT TO PAY THE COSTS.

CHASANOW, J., concurs in the result.

ELDRIDGE, Judge, dissenting.

In holding that a volunteer school aide is not entitled to weekly monetary benefits for an injury she sustained in the course of her employment, the majority adopts an overly restrictive view of Maryland Code (1978, 1997 Repl.Vol.), § 6–106 of the Education Article. Moreover, the majority's view is inconsistent with the remedial purpose underlying the Maryland Workers' Compensation Act.

Section 6–106 of the Education Article provides in pertinent part as follows:

"§ 6–106. Volunteer aides.

* * *

"(d) *Agents for purposes of liability insurance and workers' compensation.*—A volunteer aide is considered an agent of the county board for the limited purposes of:

(1) Comprehensive liability insurance coverage under § 4–105 of this article; and

(2) Workers' compensation coverage under the Maryland Workers' Compensation Act."

Under the Maryland Workers' Compensation Act, there are two principal types of compensation to which employees injured out of and in the course of their employment may be entitled—weekly monetary payments and medical expenses. According to the majority, however, the phrase "workers' compensation coverage" as it appears in § 6–106(d)(2) of the Education Article encompasses only payments for medical expenses. I find no support for this position either in the statute's language or legislative history. Had the General

---

an employer also to repair or replace an employee's eyeglasses and prosthetic devices damaged or destroyed because of a covered accident.

Assembly intended to restrict an injured volunteer aide's remedy under the Workers' Compensation Act to medical expenses, it could easily have said so. Instead, the Legislature used the broad phrase "[w]orkers compensation coverage under the Maryland Workers' Compensation Act." Given the broad scope of coverage under § 6–106(d), it is both reasonable and more consistent with the underlying purpose of the Workers' Compensation Act that volunteer education aides injured in the course of their volunteer employment should receive weekly cash payments in addition to their medical expenses.

Subsection (d) of § 6–106 was originally enacted by Chapter 220 of the Acts of 1972 for the purpose of "providing for comprehensive liability insurance and workman's compensation coverage for said [volunteer] aides." While there is no statutory definition of the term "coverage," the term "compensation" is both specifically defined in the Act and has been examined in different contexts by the Maryland courts.

Code (1991, 1996 Supp.), § 9–101(e) of the Labor and Employment Article, defines "compensation" as "the money payable under this title to a covered employee or the dependents of a covered employee," and includes "funeral benefits payable under this title." [1] This definition clearly covers weekly monetary payments and is not restricted to medical benefits.

Similarly, Maryland courts have never adopted a definition of "compensation" which limits its meaning to medical expenses only. *See Vest v. Giant Food Stores, Inc.,* 329 Md. 461, 467, 620 A.2d 340, 343 (1993) ("This definition of compensation [under § 9–101(e)] is broad and encompasses most forms of payment to employees provided under the statute…"). The Court of Special Appeals in *University of Md. v. Erie Ins.,* 89

---

1. Pursuant to § 9–226 of the Labor and Employment Article, "[a] volunteer aide under § 6–107 of the Education Article is a covered employee." A "covered employee" is defined under § 9–101(f) of the Labor and Employment Article as "an individual listed in Subtitle 2 of this title for whom a person, a governmental unit, or a quasi-public corporation is required by law to provide coverage under this title."

Md.App. 204, 211–212, 597 A.2d 1036, 1039 (1991), discussed the meaning of the term "compensation" as follows:

> "The word 'compensation' itself has more than one meaning as used throughout the Workers' Compensation Law. In various places within the statute, 'compensation' has the limited meaning of the payments ordered in accordance with the schedules in § 36 [2] for permanent total disability, temporary total disability, or permanent or temporary partial disability, as distinguished from various other benefits awardable by the Commission. In other places throughout the Workers' Compensation Law, however, the legislature used the word 'compensation' in its broad sense, referring to all benefits provided in the article, which would include medical benefits as well as rehabilitation."

*See Uninsured Employ. Fund v. Booker,* 13 Md.App. 591, 594, 284 A.2d 454, 456 (1971) ("Examination of the entire [Workers' Compensation] article ... makes inescapable the conclusion that the legislature used the word 'compensation' sometimes in a limited sense, referring to the payments called for by the schedules in § 36, but more frequently in a broad sense, referring to all benefits provided in the article"). *See also Holy Cross Hosp. v. Nichols,* 290 Md. 149, 428 A.2d 447 (1981) (holding that medical benefits are not "compensation" under former Article 101, § 40(c),[3] which authorizes the Workers' Compensation Commission to modify a prior award of compensation). Thus, even in its most limited sense, the term "compensation" would, at the very least, include weekly monetary payments.

Moreover, the normal broad meaning of the term "compensation" is fully warranted here under the principle that the Workers' Compensation Act should be construed "as liberally in favor of injured employees as its provisions will permit in order to effectuate its benevolent purposes." *Howard Co.*

---

2. Former Article 101, § 36, was repealed and recodified as Code (1991, 1996 Supp.), §§ 9–601 *et. seq.* of the Labor and Employment Article.

3. Now § 9–736(b) of the Labor and Employment Article.

*Ass'n, Retard. Citizens v. Walls,* 288 Md. 526, 530, 418 A.2d 1210, 1213 (1980). *See Vest v. Giant Food Stores, Inc., supra,* 329 Md. at 467, 620 A.2d at 342; *Lovellette v. City of Baltimore,* 297 Md. 271, 282, 465 A.2d 1141, 1147 (1983); *Ryder Truck Lines v. Kennedy,* 296 Md. 528, 537, 463 A.2d 850, 856 (1983); *Bethlehem–Sparrows Pt. Shipy'd v. Hempfield,* 206 Md. 589, 594, 112 A.2d 488, 491 (1955); *Watson v. Grimm,* 200 Md. 461, 472, 90 A.2d 180, 185 (1952); *Beth.–Fair. Shipyard v. Rosenthal,* 185 Md. 416, 425, 45 A.2d 79, 83 (1945). *See also* § 9–102(a) of the Labor and Employment Article (the Maryland Workers' Compensation Act "shall be construed to carry out its general purpose").

The fundamental purpose of the Workers' Compensation Act is not simply to reimburse injured employees for medical expenses. Instead, the Workers' Compensation Act "is designed to provide workers with compensation for loss of earning capacity resulting from accidental injury, disease or death arising out of and in the course of employment, to provide vocational rehabilitation, and to provide adequate medical services." *Queen v. Agger,* 287 Md. 342, 343, 412 A.2d 733, 734 (1980). *See Bethlehem–Sparrows Shipyard v. Damasiewicz,* 187 Md. 474, 480, 50 A.2d 799, 802 (1947) ("The general purpose of the [Workers'] Compensation Act is to provide compensation for loss of earning capacity resulting from accidental injuries sustained in industrial employment"). A volunteer education aide may, as a result of an injury in the course of voluntary school work, suffer a loss of earning capacity affecting the aide in his or her regular job.

Even assuming arguendo that there is a "gap" in the law, as the majority states, as to whether the Legislature intended that injured volunteer education aides receive weekly cash benefits, any uncertainty in the Act should be construed in favor of the claimant. *Baltimore v. Cassidy,* 338 Md. 88, 97, 656 A.2d 757, 761–762 (1995); *R & T Construction Co. v. Judge,* 323 Md. 514, 529, 594 A.2d 99, 107 (1991); *Victor v. Proctor & Gamble,* 318 Md. 624, 629, 569 A.2d 697, 700 (1990); *Trotta v. County Car Center,* 292 Md. 660, 663, 441 A.2d 343, 344 (1982); *Howard County Ass'n, Retard. Cit. v. Walls,*

*supra,* 288 Md. at 530, 418 A.2d at 1213; *Barnes v. Ezrine Tire Co.,* 249 Md. 557, 561, 241 A.2d 392, 395 (1968).

Section 9–625 of the Labor and Employment Article provides further support for affording injured volunteer education aides weekly monetary payments under the Workers' Compensation Act. Part IV of the Act applies to those employees, including the volunteer employee in this case, who have sustained a permanent partial disability. Specifically, the scope of Part IV is set forth in § 9–625 as follows:

"**§ 9–625. Scope of part.**

A covered employee who is permanently partially disabled due to an accidental personal injury or an occupational disease shall be paid compensation in accordance with this Part IV of this subtitle."

Part IX, and not Part IV, provides for the payment of medical expenses to injured employees. The only benefits payable to an injured employee under Part IV are specifically provided for in § 9–626, which states as follows:

"**§ 9–626. Minimum compensation.**

(a) *In general.*—Except as provided in subsection (b) of this section, a covered employee who is entitled to compensation under this subtitle for a permanent partial disability shall receive minimum weekly compensation of $50.

(b) *Covered employee with average weekly wage less than $50.*—If the covered employee has an average weekly wage of less than $50 at the time of the accidental personal injury or the last injurious exposure to the hazards of the occupational disease, the covered employee shall receive minimum compensation that equals the average weekly wage of the covered employee."

As provided in § 9–625, a covered employee aide who suffers a permanent partial disability in the course of her employment shall be compensated in accordance with Part IV of the Workers' Compensation Act. It follows that, as a covered employee, a volunteer aide who does not have an "average weekly wage" is nonetheless entitled to minimum weekly compensation of $50 under § 9–626(a).

In support of its holding, the majority relies upon the General Assembly's decision in 1991 not to adopt the recommendation of the Department of Legislative Reference to create an average weekly wage for volunteer aides. In my opinion, this recommendation was at best ambiguous as to whether it actually informed the Legislature that volunteer aides would otherwise be limited in their recovery to reimbursement for medical expenses. It seems to me equally as likely that the General Assembly found it unnecessary to create an average weekly wage for such volunteers in light of the language of § 6–106(d) of the Education Article and § 9–626 of the Labor and Employment Article. I simply cannot adopt the majority's position that inaction by the Legislature, as to one recommendation included within a 52 page report, restricts the language of § 6–106(d) of the Education Article.

For the above reasons, I would reverse the judgment of the Circuit Court for Baltimore City.