NORTH BECK MINING CO. et al. v. INDUSTRIAL COMMISSION OF UTAH.

No. 3666.    Decided July 27, 1921.    (200 Pac. 111.)

1. MASTER AND SERVANT—COMPENSATION CLAIMANT NOT PARTY TO BE SERVED WITH NOTICE OF CERTIORARI. Under Industrial Act, as amended by Sess. Laws 1919, c. 63, an injured employee, though a proper, is not a necessary, party on employer's application for writ of certiorari to review award of the Industrial Commission made in proceedings under the Industrial Act, and the failure to serve employee with notice of a proceeding until after the expiration of the 30 days during which a party affected by an award may apply for writ of certiorari does not affect the jurisdiction of the court to review the commission's award.

2. EVIDENCE—IT IS A MATTER OF COMMON KNOWLEDGE THAT ADJOINING FINGERS BEGIN TO FUNCTION FOR AMPUTATED FINGER. It is a matter of common knowledge that if one finger is amputated, the adjoining fingers begin to function for the missing member, and soon acquire the power, to a great extent, of taking the place of the lost finger.

3. MASTER AND SERVANT—COMPENSATION FOR LOSS OF FINGERS BASED ON PROPORTION OF LOSS OF USE OF HAND. Where injuries to employee resulted in the amputation of the first three fingers of employee's hand at the proximal joint, the amputation of the little finger at the junction of the second and third phalanges, and the removal of a chip from the head of the metacarpal bone of the index finger, the Industrial Commission properly based its award upon the proportion of the loss of the use of the whole hand, under Comp. Laws 1917, § 3138,

Certiorari.   Award Affirmed

as amended by Sess. Laws 1919, c. 63, instead of taking the total of the compensation for the loss of each particular finger or part thereof.

4.  MASTER AND SERVANT—AMOUNT OF COMPENSATION CLAIMANT'S LOSS OF USE OF HAND BY AMPUTATION OF FINGERS QUESTION OF FACT NOT REVIEWABLE.  In proceedings under the Industrial Act the proportion of the loss of use of the whole hand by amputation of fingers is a question of fact for the Commission, the finding on which is not reviewable on certiorari.

5.  EVIDENCE—JUDICIAL NOTICE TAKEN THAT MINER'S HAND AFTER LOSS OF PORTIONS OF FOUR FINGERS WAS MORE THAN 50 PER CENT. DEFICIENT.   On certiorari to review award of Industrial Commission to employee, who sustained injuries resulting from the amputation of the first three fingers of his hand at the proximal joint, the amputation of the little finger at the junction of the second and third phalanges and the removal of a chip from the head of the metacarpal bone of the index finger, the court will take judicial notice that the employee's loss of the use of his hand in his vocation as a miner exceeds 50 per cent. of the, use of the whole hand.

Proceedings under the Industrial Act by Arvid Erickson for compensation for injuries while employed by the North Beck Mining Company, employer, and others.  Award for employee by the Industrial Commission of Utah, and the employer and others bring certiorari.

AWARD AFFIRMED.

*James H. Wolfe*, of Salt Lake City, for plaintiffs.

*Harvey Cluff*, Atty. Gen., and *John R. Robinson*, Asst. Atty. Gen., for defendant.

WEBER, J.

Arvid Erickson (who was made a party to these proceedings) was injured on November 21, 1920, while employed as a miner by the North Beck Mining Company, one of the plaintiffs.  The injury resulted in the amputation of the first three fingers of the right hand at the proximal joint, and the

removal of a chip from the head of the metacarpal bone of the index finger. The little finger was amputated at the junction of the second and third phalanges. The thumb was not injured, and is capable of junction with the palm of the hand and the stump of the little finger.

At the time of 'the accident Erickson was earning $42 per week. The Industrial Commission awarded him compensation for temporary total disability from the time of the injury until January 25, 1921, which allowance has been paid and is not now in dispute. The Commission further awarded compensation to Erickson at the rate of $16 per week for a period of 75 weeks, beginning January 26, 1921. A petition for rehearing was denied by the Commission. Within 30 days thereafter plaintiffs applied to this court for a writ of certiorari or review. The writ was served upon the Industrial Commission, directing it to certify its record in the case to this court. The statute was followed in all particulars, and the certified record was transmitted as required by the writ. No notice of any kind was served upon Arvid Erickson, to whom the award for compensation had been made, and no attempt was made by plaintiffs to make him a party to the proceedings here until after the expiration of the 30 days during which a party affected by an award of the Industrial Commission may apply to this court for a writ of certiorari. Erickson, by his counsel, now moves to dismiss these proceedings.

The Industrial Act of Utah (Comp. Laws 1917, §§ 3061-3165) is sui generis. The act provides inter alia that the Commission is not bound by the usual common-law or statutory rules of evidence, or by any technical or formal rules of procedure other than provided in the law itself; it may make investigations in such manner as in its judgment is best calculated to ascertain the substantial rights of the parties and to carry out the spirit of the act. When an award is, made to an applicant or claimant, and the employer or insurer applies to the Supreme Court for a writ of certiorari, the Attorney General appears for the Commission at the hearing, and defends the award and protects in every way within

Certiorari.   Award Affirmed

his power, the rights of the applicant to whom compensation was awarded.   The workman who has been injured and applies for compensation is represented by the Commission, and is thus protected against the imposition of costs if the award be vacated, and without cost to him he is provided with competent counsel to defend and safeguard his interests.   The statute makes no provision for service of any notice upon parties other than the Commission in cases where proceedings are instituted to review an award by writ of certiorari. When an appeal is taken from a judgment, the law provides that the notice of appeal must be served upon the adverse party.   To give jurisdiction to the appellate court the notice of appeal, unless waived, must be served upon each necessary party to the appeal or upon his counsel.   The Industrial Act has no such provision.   From an award there is no appeal. The award can be attacked only by writ of certiorari and upon jurisdictional grounds, and if this, as contended for by counsel for defendant, should be considered as a substitute for an appeal, with this court limited as to the questions to be reviewed, it is still significant that the Industrial Act, as amended by Sess. Laws 1919, p. 165, provides that—

"The Commission and each party to the action or proceeding before the Commission shall have the right to appear in the review proceedings."

The Industrial Act, including the procedure therein provided, must be liberally construed, and with the purpose of effectuating its beneficent and humane objects.   With that idea in mind, it seems clear that the legislative intent is that in certiorari proceedings where an award is complained of no party need be given notice of the review or certiorari except the Commission.   If all parties are to be served with notice, why the statute that says that the Commission and each party to the proceedings shall have the right to appear in the review proceedings, and why did not the Legislature, in suitable language, say that a writ shall not issue unless all parties interested therein are given notice?   Whether the applicant to whom compensation is awarded appears in the case or not, he and his rights are protected by the Commission who defends the award against the attacks made upon it.

It is maintained by counsel for defendant that the award is in the nature of a judgment. The Industrial Act provides that an abstract of an award may be filed in the office of the clerk of the district court in any county of the state and docketed in the judgment book, and that thereafter it constitutes a lien upon the real property of the employer situated in the county for a period of eight years from the date of the award, unless previously satisfied, and that an execution may issue thereon within the same time and in the same manner and with like effect as if the award were a, judgment of the district court. Docketing the award for the purpose of making it a lien upon the real estate of the employer does not transmute the award into what is ordinarily denominated a judgment. The Commission can render no judgments because its powers are administrative only. It is simply an arm of the state, and is devoid of any judicial power. When a judgment of a court has been rendered and is not appealed from within the statutory time, it is thereafter not subject to attack, except by an action in equity. An award rendered by the Commission has no such elements of finality. On the contrary, the act provides that the powers and jurisdiction of the Commission over each case shall be continuing, and ''it may from time to time make such modification or changes with respect to former findings or orders with respect thereto, as in its opinion may be justified.'' Comp. Laws 1917, § 3144. In certiorari proceedings instituted for the purpose of reviewing those questions that are subject to review in connection with an award, service upon the Commission is all that is necessary. The applicant, Arvid Erickson, not being a necessary party to these proceedings, the act does not require service of notice of application for the writ upon him. The motion to dismiss is therefore denied.

The Commission, no doubt, has the power to require notice to be given to all the parties that may be interested in the certiorari proceedings, and it would be good practice to require such notice to be given. If that be done, each party may employ such counsel as he chooses, provided he is willing to pay their fees. Such notice is, however, not jurisdictional,

and in no way affects the proceedings in this court.

The principal question here involved is as to the correctness of the award. This award was made on the basis of 50 per cent. loss of the use of the right hand. The schedule in Comp. Laws Utah 1917, § 3138, as amended by Sess. Laws 1919, provides for loss of the first finger at proximal joint compensation for 20 weeks; for second finger at proximal joint, 15 weeks; for third finger at proximal joint, 12 weeks; for fourth finger at second joint, 6 weeks—making a total of 53 weeks, which, with the 2 weeks for the chip off the metacarpal bone of the first finger, makes 55 weeks in all, the amount which, plaintiffs claim, should have been allowed instead of the 75 weeks compensation awarded by the Commission. As stated by counsel for plaintiffs, the issue is:

"When there is a loss of more than one finger of the hand, should the compensation be figured as a total of the compensation for the loss of each particular finger or part thereof, or should the compensation be based upon a proportion of the loss of use of the whole hand? Stated in another way, does the schedule in section 3138, C. L. 1917, govern only when a single digit or part thereof is removed, or does it govern the loss of a combination of digits? It will be noted that the issue is important because upon its decision depends the character of evidence which should be introduced. If any more than a single digit is removed, and the compensation is to be based on the percentage of total loss of use, then evidence of that fact must be adduced; if it is a question of adding the compensations for the loss of each particular member, then the only fact that need be ascertained is the extent of the loss of the fingers."

The contention of defendant is that the provision for specific compensation provided for in section 3138 as amended by Sess. Laws 1919, applies only where that loss is the extent of the injury to the hand, and that the specific amounts have no application where there is a loss of several fingers.

It is a matter of common knowledge that if one finger on a hand is amputated the adjoining fingers begin to function for the missing member, and soon acquire the power, to a great extent, of taking the place of the lost finger. It follows that the loss of two adjoining fingers must necessarily be something more than the sum of the loss of

each finger separately. If all the fingers of a hand are amputated, it would not amount to the total loss of the use of the hand, because the palm of the hand would still be of some use. But it would not be fair, and we do not think it was intended by the statute, as amended in 1919, to compensate for the loss of all the fingers by adding the scheduled benefits for the loss of each finger. In 1919 the law was amended by adding to the schedules for specific losses this provision:

"Any other disfigurement, or the loss of bodily function not otherwise provided for herein, such period of compensation as the Commission shall deem equitable and in proportion to compensation in other cases not exceeding two hundred weeks."

It seems plain and clear to us that this amendment was adopted for the express purpose of providing fair and adequate compensation in cases like the one before us. The majority of the Commission in making the award based it on the idea that where several fingers are lost it is the loss of a "bodily function not otherwise provided for" in the schedule, and that, therefore, the compensation must be awarded in proportion to the loss of use, to be ascertained by evidence, which the loss bears to the total loss of the hand. Commenting upon the position taken by the Commission, counsel for plaintiffs say it is difficult to see how they arrive at a 50 per cent. loss of his hand on this basis, because the only evidence in the record shows that the loss should be "around 30 or 40 per cent." That was the effect of the testimony of a physician at the hearing before the Commission. A majority of the Commission disregarded the testimony of the physician, evidently believing that they knew as much as he about the degree of efficiency lost by the amputation of the fingers of a hand. Besides, when the physician's testimony was objected to by counsel for Erickson, it was stipulated by the parties that if the Commission deemed it a matter for expert testimony the Commission might make such inquiry from reputable physicians as it deemed advisable. At the hearing it was the contention of Erickson's counsel that it was a matter of which the Commission and courts would take judicial notice, and that any intelligent person conversant with the

needs of a working man in his particular trade could determine the damage resulting from the loss of a finger as well as a medical man.   Some medical men's judgment would be sound, not particularly because of their medical training, but by reason of their general common sense.   The testimony of other medical experts would be entirely worthless, because of eccentricities of the particular physician.   At any rate, the physician would know no more about such matters than any other intelligent man, and no more than the members of the Commission.   The Commission determined that Erickson's loss of efficiency of his right hand was 50 per cent. Erickson is a miner, and was working as a miner at the time of the accident.   What can he now earn as a miner?   Counsel for plaintiffs argue that with three fingers amputated one can, with the thumb and little finger alone, do many things; that one can grasp objects such as shovels and tools and use them efficiently.   That all depends upon what is regarded as efficient use.   We do not think that a carpenter with three fingers of his right hand amputated could possibly be 50 per cent. efficient at his trade, even if he could grasp tools with the thumb and little finger.   A miner handling pick and shovel or a drill hammer eight hours per day, using only the thumb and little finger of his right hand, would, it appears to us, have the greatest difficulty in doing 50 per cent. of the work he could do before the loss of the fingers.   Doubtless one can, as suggested by counsel, button his own clothes and tie a necktie with only the thumb and little finger.   In fact many men could easily dispense with the use of three fingers and tie a four-in-hand with neatness and dispatch, but tying neckties is not of great importance in a miner's life and work.   The thing of importance here is whether the miner could still earn a miner's wages as a miner, or at anything else that a miner can do, and that question we unhesitatingly answer in the negative.   We are impressed, from what is common knowledge of which courts take judicial notice, that the appellant's loss of the usability of his hand in his vocation as a miner exceeds the 50 per cent. loss of efficiency found by the Commission, and that if the

Commission made any mistake it was not in finding the **4, 5** per centage of loss of claimant's right hand to be in excess of 50 per cent. As to the percentage of loss of efficiency, we are, however, not concerned. That is a question of fact wholly within the province of the Commission for decision. If it adopted the proper method of estimating compensation, as we think it did, the question of the amount of the loss of efficiency is wholly one of fact that is not reviewable here.

As supporting their contention, plaintiffs rely largely upon New York cases, citing *Barringer* v. *Clark*, 184 App. Div. 695, 172 N. Y. Supp. 398; *Grammici* v. *Zinn*, 219 N. Y. 322, 114 N. E. 397; *Kanzar* v. *Acorn Mfg. Co.*, 219 N. Y. 326, 114 N. E. 398; *Carkey* v. *Island Paper Co.*, 177 App. Div. 73, 163 N. Y. Supp. 710; *Adams* v. *Boorum & Pease Co.*, 119 App. Div. 412, 166 N. Y. Supp. 97. In the last-cited case the court says that the statute makes no provision for the loss of part of a hand. As stated heretofore, the amendment adopted by the Utah Legislature in 1919 contains a provision that gives to the claimant a remedy in cases like this. No such provision was in the New York statute at the time the cases referred to were decided; the New York statute on the subject here involved was substantially that of Utah before the amendment of 1919. As a result of the New York decisions the Legislature of that state in 1917 (Laws 1917, c. 705, § 15), after providing specific amounts for the loss of fingers, provided further:

"Where the injury results in the loss of more than one finger, compensation therefor may be awarded for the proportionate loss of the use of the hand thereby occasioned, provided, however, that in no case shall the compensation awarded for more than one finger exceed the amount provided in this schedule for the loss of the hand."

While not as explicit as that of New York, the amendment adopted by the Utah Legislature in 1919 does accomplish, and was intended to accomplish, the same result as that attained by the New York amendment. To allow for the decreased usability of the hand when more than one finger is lost is, in our opinion, a fair method of compensation, and is

also the. method contemplated by the Legislature when in 1919 it amended the Industrial Act.

We think the Commission's award is correct, and it is therefore affirmed, with interest and costs.

CORFMAN, C. J., and GIDEON, THURMAN, and FRICK, JJ., concur.