UTAH FUEL CO. v. INDUSTRIAL COMMISSION OF UTAH.

No. 3716.   Decided November 7, 1921.   (201 Pac. 1043.)

1. MASTER AND SERVANT—COMPENSATION AWARD AGAINST EMPLOYER APPEARING WITHOUT FORMAL APPLICATION AND NOTICE HELD VALID. Though the proceedings in a workmen's compensation proceeding were irregular where no application for compensation was filed with the Commission, and the only notice served on the employer respected the amount of the employé's earnings, yet, where the employer at the hearing conceded that the relation of employer and employé existed, and that the employé was

injured in its mine in the course of his employment, and was
entitled to some compensation, the Commission had jurisdiction
to make an award.[1]

2.  MASTER AND SERVANT—"AVERAGE WEEKLY WAGE" OF COMPENSA-
TION CLAIMANT DEFINED.  Where employment in a mine was
irregular and intermittent, and varied at different seasons of
the year, but fairly average 222 days each year, and employés
desiring to continue in the employment were required to be
where they could be called when wanted, an employé's weekly
wages should be computed for the purpose of determining the
compensation for injuries by multiplying his daily wages by
222 and dividing by 52.[2]

Proceedings under the Industrial Commission Act, for
compensation for injuries to Clyde Parry, opposed by the
Utah Fuel Company, employer.  Compensation was awarded
by the Industrial Commission, and the employer obtained
a writ of review.

APPLICATION for writ of review DISMISSED.

*Ferdinand Ericksen* and *H. J. Binch*, both of Salt Lake
City, for plaintiff.

*H. H. Cluff*, Atty. Gen., and *J. Robert Robinson*, Asst.
Atty. Gen., for defendant.

FRICK, J.

The plaintiff owns and operates a coal mine in this state.
One Clyde Parry, on the 25th day of March, 1921, while
employed by the plaintiff in its coal mine, and in the course
of his employment, sustained personal injuries by reason of
which he was prevented from continuing his employment.

The plaintiff and said Parry both were subject to the pro-
visions of our Industrial Commission Act Comp. Laws 1917,

[1] *North Beck Min. Co. v. Industrial Commission*, 58 Utah 486,
200 Pac. 111.

[2] Distinguishing *State Road Commission v. Industrial Commis-
sion*, 56 Utah 252, 190 Pac. 544.

§ 3061 et seq.), the plaintiff being what is called a self-insurer under the act.

On the 22d day of June, 1921, the Commission, by some means not disclosed by the record, having taken jurisdiction of Parry's case without a formal application on his part, served notice upon the plaintiff that a hearing would be had on the 6th day of July, 1921, respecting the injuries sustained by said Parry to determine the amount of his earnings. The plaintiff, through its counsel, appeared at the hearing aforesaid, and, upon the evidence produced by it and other evidence, the Commission made an award to said Parry of $16 per week, beginning on the 29th day of March, 1921, and ordered that the plaintiff pay the amount awarded as aforesaid to said Parry during the continuance of his inability to work.

The plaintiff, in due time, filed its application for a rehearing as provided by said act, and, the hearing having been denied, the plaintiff made application to this court for a writ of review which was issued pursuant to the provisions of said act.

The Attorney General, as counsel for the Commission, and said Parry, filed a general demurrer to plaintiff's application, and the cause was submitted to this court upon the demurrer.

The plaintiff, in its application alleges that the Commission exceeded its powers or jurisdiction in making said award in two particulars: (1) That, in view that no application for compensation was made to the Commission by said Parry either in person or by some one on his behalf, the Commission did not acquire jurisdiction of the case, and hence it exceeded its jurisdiction in making said award; and (2) that the award of the Commission is without support in the evidence, and hence should not prevail.

In regard to the first ground stated above it is only fair to counsel for plaintiff to state that at the hearing they frankly stated that they do not seriously contend that the Commission was wholly without jurisdiction because no formal application was made by said Parry, but they insist that the

proceedings were grossly irregular in that no application of any kind was made. No doubt the Commission should insist that every applicant comply with its rules by which he is required to file a written application. Such an application should be filed in every case in which at least the jurisdictional facts should be stated. As pointed out by this court, however, in the case of *North Beck Min. Co.* v. *Industrial Commission*, 58 Utah 486, 200 Pac. 111, the proceedings before the Commission are very informal· and in some respects "sui generis." Nor does the act require any particular thing to be done by an applicant in order to confer jurisdiction upon the Commission where both the employer and the employé are subject to the provisions of the· act. It is necessary, however, in each case, that due notice be given to the employer that an application for compensation is made by some person who asserts that he has suffered injury, that he sustained the relation of employé to such employer at the time of the injury, and that the injury arose through an accident which occurred in the course of his employment. When that is done the employer is given an opportunity to defend against the claim if for any reason it should not be well founded, and if it be well founded he may, nevertheless, be heard upon the question of the amount of compensation that should be awarded. As before stated, however, in this case notice was given to the plaintiff that a hearing would be had respecting the amount of Parry's earnings, at which hearing plaintiff appeared, and in which it took part without objection. If it be conceded, therefore, as it must be, that in view that no application of any kind for compensation was filed with the Commission, and that the only notice that was served on plaintiff was with respect to the amount of the earnings of Parry, and therefore the proceedings were very irregular, yet, in view that at the hearing aforesaid plaintiff conceded that the relation of employer and employé existed between it and the said Parry at the time he was injured, that he was injured in its mine in the course of employment, and that he was entitled to some compensation, the Commission clearly had jurisdiction to make an award in favor of said Parry.

The first objection therefore cannot be sustained.

In recurring to the second ground of objection, namely, that there is no evidence in support of the award, it becomes necessary to state as briefly as possible the controlling facts, practically all of which appear from plaintiff's admissions or from the testimony of its employés. It was made to appear that at the time of the injury Parry was employed as a driver in plaintiff's coal mine; that as such driver he earned $7.95 per day; that he worked part of the time as a driver and part of the time as a coal miner; that when he was employed as a miner he was paid by the ton; that he went to work for plaintiff on the 8th day of February, 1921, and continued in its employ until injured as before stated; that during the month of February he earned $63.50 and during the month of March up to the time of the injury $58.25, making a total of $121.75 during February and March; that during the entire period aforesaid Parry worked 46 days, or six and four-sevenths weeks; that in view of the foregoing conditions Parry's average weekly wage during the time he worked amounted to $18.55 per week; that under the provisions of the act he would be entitled to 60 per cent of that amount, which would amount to $11.13 per week and no more.

The Commission, however, refused to limit Parry's compensation as contended for by plaintiff, and, as before stated, awarded him compensation at the rate of $16 per week, the maximum allowance under the act. The Commission arrived at its conclusion as follows: It determined Parry's daily earnings at the time of the injury to be $7.95 and allowed him 300 working days in the year, which gave his yearly earnings to be $2,385. In order to arrive at his weekly average the Commission divided the annual earnings by 52, the number of weeks in a year, which made his weekly average somewhat in excess of $45, 60 per cent. of which would exceed $16 per week, the maximum alowed by the act, and hence the Commission awarded him the maximum amount as before stated.

It is strenuously insisted that the amount allowed by the

Commission is contrary to both the law and the evidence. The evidence on the part of the plaintiff showed that, in view that the demand for coal was irregular and intermittent, the mine could not be operated every day in the year, and that there were many weeks during the year when the mine could only be operated for a few days in each week, some weeks more, some less. It was made to appear, however, that during four winter months the demand for coal was more uniform and during which period the mine was worked practically every day; that during the spring and fall months it could be operated only from 3 to 5 days per week, while during the summer months the operation was even less than that, so that the yearly average that the mine was worked was 222 days. It was also shown that that average was a fair yearly average for a number of years, and that the operation of other coal mines in this state was practically in the same condition, some perhaps operating some days in excess of plaintiff's average while others operated a few days less during the year. The evidence is clear, however, that the average number of days that plaintiff's mine was being operated during the year was practically a permanent condition, so that it can well be assumed that the average number of days plaintiff's mine was operated in each year was 222 days, as before stated. We are confronted therefore with a condition where the employment is necessarily irregular and intermittent.

Plaintiff's evidence is to the effect that its employés must remain in attendance at the mine if they desire to continue in its employ; that is, if a miner or other employé should fail to report for work on a day the mine is to be operated, and that should occur for a number of days, he would be stricken from the rolls and would thus lose his job. . The employés must therefore be in attendance at the mine so that, when notice is given that the mine will be operated (which is done by the blowing of a whistle in the evening preceding the day the mine will be operated), they may report for work on the following morning. It is clear, therefore, that although plaintiff's employés, by reason of conditions over

which it has no control, cannot be continuously employed, yet they must be where they can be called at any time when they may be wanted if they desire to continue in the employment. Under such circumstances it must be apparent to all that plaintiff's method of arriving at the average weekly earnings is necessarily faulty, while upon the other hand, it is, we think, equally clear that the Commission's method of arriving at the average weekly wage is likewise unsound.

In view of the circumstances, therefore, the question is: What is the proper weekly average and how shall it be ascertained?

We shall assume that Parry's daily wage at the time of the injury was $7.95, because both the plaintiff and the Commission have assumed that to have been his wage, although, under the evidence, his earnings when engaged as a miner were somewhat less. The difference, however, was not sufficient to have reduced the weekly allowance, and hence it is of no significance in this case. As before stated, the yearly average number of days the mine was operated was 222. Plaintiff thus operated its mine 222 days in each year, and its employés knew that that was the number of days that they would be given an opportunity to earn the wages paid by plaintiff in operating its mine, and voluntarily accepted those conditions. That being so, Parry had the opportunity to work 222 days in the year. His daily wages must thus be multiplied by 222, which will give the amount of his yearly earnings. If, therefore, we multiply 222 by $7.95, his daily wage, his earnings would have amounted to $1,764.90 during the year. If we divide that amount by 52, the number of weeks in a year, it will give us a weekly average of somewhat in excess of $33. Sixty per cent. of $33 is in excess of $16 per week, the amount allowed by the Commission. The award is therefore not excessive, as contended for by plaintiff.

The only question is whether the basis for the foregoing computation is the correct one. As we have pointed out, the basis contended for by plaintiff cannot be correct. Neither can the one adopted by the Commission be successfully de-

fended under the circumstances of this case. The basis assumed by plaintiff is not just in that the period of employment is too restricted while the basis adopted by the Commission is unfair because it assumes that Parry could have worked 300 days in the year while under the undisputed evidence he could only have worked 222 days. Under the plaintiff's theory Parry's average weekly wage was too low, while under the Commission's theory it was too high, since it assumed that Parry would earn wages during 300 days, which he could not do. Nor, in view of the circumstances, is there any other method or arriving at the average weekly wage which is just and fair to both employer and employé than the one adopted by us. If, for example, the four winter months during which the mine was operated practically continuously were taken as a basis to ascertain the average weekly wage of the employé, the basis would be too favorable to such employé, while if the summer months were taken as the basis, when the mine was operated less, but during which time the employé must nevertheless be in attendance if he desires to continue in his employment, the basis would be too favorable to the employer. We are persuaded, therefore, that the only method to ascertain the true weekly average is the one we have adopted.

While neither plaintiff's counsel nor the Attorney General has found any American cases which are directly in point, and while we have found none, yet the Attorney General has called our attention to several English cases where, under circumstances similar to this case, the method adopted by us was approved and applied. See *Perry* v. *Wright,* [1908] 1, K. B. 441; *White* v. *Wiseman,* [1912] 3 K. B. 352; *Anslow* v. *Cannock-Chase Colliery Co.,* [1909] Appeal Cases, 431, 5 Butterworth's Workmen's Compensation Cases, 634. We shall not pause here to review those cases nor quote from them. It must suffice to say that they clearly sustain the theory upon which we have proceeded in this case.

Plaintiff's counsel, however, insist that this court is committed to the doctrine contended for by them by what was said in the case of *State Road Commission* v. *Industrial*

*Commission,* 56 Utah 252, 190 Pac. 544. A mere cursory reading of the opinion in that case will disclose that it has no application here. That was a case where the employment in its very nature was merely occasional, and where the employé could devote his time to other remunerative employment. The employment in that case was not even what is known as seasonal employment. While the employment in this case somewhat partakes of the nature of a seasonal employment, yet it is not such in fact. It is merely an intermittent or irregular employment which continues in that way more or less throughout the entire year. The whole year must therefore be considered in order to arrive at a fair average of the employé's earnings. If the employé is injured and is thus prevented from earning wages, he loses precisely what he could have earned, and is entitled to 60 per cent. of his earnings unless the 60 per cent. exceeds the maximum allowed by the act.

In this case, therefore, although the Commission's method of arriving at the average weekly wage was clearly unsupported by the evidence yet, in view that the evidence as clearly supported the amount that was actually allowed, the award is not excessive, and must therefore stand.

The application must therefore be dismissed, with costs.

CORFMAN, C. J., and WEBER, GIDEON, and THURMAN, JJ., concur.