# ROBERT H. HANSON v. WALTER F. HAYES AND ANOTHER, d. b. a. MINNESOTA ENGINEERING & MACHINE SHOP, AND ANOTHER.[1]

November 7, 1947.

No. 34,522.

[1]Reported in 29 N. W. (2d) 473.

*R. F. Merriam,* for relator.
*John M. Prins,* for respondents.

PETERSON, JUSTICE.

The employe brings certiorari to review the award of the industrial commission.

Three questions are presented for decision: (1) Whether the compensation payable to a minor during the healing period should be based upon his weekly wage at the time of his injury or upon the weekly wage he probably would earn after arriving at legal age, if uninjured; (2) whether, where the injuries sustained by the employe consist of the loss of three fingers without injury to or loss of function of the hand, the employe is entitled to compensation for loss of use of the hand as a whole occasioned by the loss of the fingers in addition to that for the loss of the fingers; and (3) whether the opinions of nonmedical witnesses experienced in the field of disability, rehabilitation, and employment are admissible to show the extent of an employe's disability as the result of industrial accident. It is conceded that if our answer to the second question is against the employe there will be no necessity for answering the third one.

The employe, a minor 18 years old at the time of the accident, July 8, 1946, was injured while operating a punch press, necessitating amputation of the second, third, and fourth fingers of his left hand in such a manner that a short stub of each finger distal to the metacarpal bone remained. The thumb and the palm of the hand were uninjured. The index finger was fractured, but healed with no compensable injury. The healing period was 14 2/5 weeks, for which there was paid compensation amounting to $17.33 per week based upon employe's weekly wage of $26 at the time of injury. An award of compensation for the loss of the fingers was made for a period of 65 weeks—30 weeks for the second finger, 20 weeks for the third finger, and 15 weeks for the fourth finger—at the rate of $24 per week based upon an average weekly wage of $36, the amount which he probably would earn after arriving at legal age, if uninjured.

■ Where a minor suffers the loss of a member, he is entitled during the healing period to compensation at the same rate as for loss of the member itself. M. S. A. 176.11, subd. 3, provides that for permanent partial disability of a member, which includes a finger or fingers (subsections [1-7]), an employe shall receive during the healing period "compensation" at the rate specified; and that "thereafter and in addition thereto" he shall be paid "compensation" according to the schedule, which provides among other things for specific compensation to be paid for loss of a finger or fingers or parts thereof.

Subd. 7 of § 176.11 provides:

"If any employee entitled to the benefits of the workmen's compensation law is a minor * * * and sustains injuries due to an accident arising out of and in the course of his employment resulting in permanent total or permanent partial disability, the weekly earnings, for the purpose of computing the compensation to which he is entitled, shall be the weekly earnings which such minor * * * would probably earn after arriving at legal age * * *, if uninjured, which probable earnings shall be approximately the average earnings of adult journeymen workmen of the same sex below the rank of superintendent or general foremen in the department of the plant or industry in which such minor * * * was employed at the time of his injury."

The word "compensation" is defined in § 176.01, subd. 2, as follows:

"The word 'compensation' indicates the money benefits to be paid on account of injury or death."

Payments under the workmen's compensation act for injury, medical care, and hospitalization are compensation. Behr v. Soth, 170 Minn. 278, 212 N. W. 461. See, Fehland v. City of St. Paul, 215 Minn. 94, 9 N. W. (2d) 349; 8 Wd. & Phr. (Perm. ed.) Compensation, pp. 209-214, and Pocket Part. Hence, benefits for both the healing period and for the injuries under the schedule are compensation. Both § 176.11, subd. 3, providing for benefits during the healing period, and *Id.* subd. 7, providing for the benefits to be paid to minors, ex-

pressly refer to the benefits as "compensation." True, subd. 3, both in the provisions for compensation during the healing period and in those in the schedule for specific compensation for specific injuries, provides that the compensation shall be computed upon the daily wage "at the time of injury," but these provisions were amended and modified by subd. 7, which was added by L. 1929, c. 250, and which, as the later law, controls. It is conceded that subd. 7 amends the provisions of the schedule, but it is contended that it did not amend those relating to the healing period. There is no basis for a distinction under which there would be one rate of compensation for the healing period and another for the injuries themselves. Subd. 7 amends subd. 3 in its entirety—the provisions relating to the healing period as well as those in the schedule. That being true, a minor is entitled to compensation for both the healing period and for injuries under the schedule computed upon his probable earnings after arriving at legal age, if uninjured.

The employer contends, however, that the word "compensation" as used in subd. 7 has acquired by practical construction thereof by the industrial commission a meaning which includes only benefits for injuries causing permanent total or permanent partial disability, and excludes those for the healing period. There was no showing of long, continued, and settled construction of the word by the commission as claimed. In support of the employer's contention, two decisions of the commission, viz., Fitzgerald v. Powell's, Inc. 9 Minn. Work. Comp. Dec. 400, and Bullock v. Rapin Wax Paper Co. 7 Minn. Work. Comp. Dec. 13, are cited.

A practical construction of a word can result only where the word has received a long, continued, and settled construction. 6 Dunnell, Dig. & Supp. § 8952. Practical construction is a fact, which must be made to appear by the record; courts do not take judicial notice of it. State ex rel. Gillis v. Goodrich, 195 Minn. 644, 264 N. W. 234. Since there was no showing of long, continued, and settled construction of the word by the commission as claimed, support, if any, for such a practical construction must be found in the decisions of the commission which have been cited. These decisions do not show

the practical construction claimed. In neither of the cases was the point involved, and the commission did not pass on it. In the Bullock case, there was a comment by way of dictum to the effect that the rule contended for by the employer was "the proper one." Such a dictum falls short of the requirement of showing a long, continued, and settled construction. Hence, there is no basis for holding that there has been a practical construction as claimed.

No authority has been cited, and we have been unable to find any, that sustains the employe's contention that he is entitled to compensation for both the loss of his fingers and for disability of his hand as a whole occasioned by the loss of the fingers. There seem to be two classes of statutes. For example, there are those of states like Minnesota, Michigan, and New Jersey, under which an employe. is entitled, where there is loss of more than one finger in a single accident without injury to the hand itself (as here), to compensation for the aggregate of the number of weeks allowed for each finger separately without anything for loss of use of the hand as a whole caused by the loss of the fingers, as in State ex rel. M. O. & S. F. Co. v. District Court, 136 Minn. 447, 162 N. W. 527; and those of states like New York, Utah, and others, under which an employe is entitled in such cases to compensation for the proportionate loss of the use of the hand caused by the loss of the fingers, but not to compensation for the loss of the fingers as such, as in Matter of Marhoffer v. Marhoffer, 220 N. Y. 543, 116 N. E. 379. As we pointed out in numerous cases, the matter of the amount and extent of compensation coverage is one of legislative policy. We should not overlook, however, that in the Marhoffer case the New York court expressed the view (220 N. Y. 548, 116 N. E. 380) that the rule allowing loss for each finger as such rather than for loss of use of the hand occasioned by the loss of the fingers is the "more liberal one."

In the instant case, employe has sustained the loss of three fingers with no injury to the hand as such. In this connection, the noncompensable injury to the first finger need not be considered. We think that the rule derived from our statutes and cases is that an employe suffering the loss of several fingers in one accident without

separate injury to the hand is entitled to compensation only for the loss of the fingers without anything in addition for loss of use of the hand as a whole resulting from the loss of the fingers; and that the instant case is governed by that rule. The pertinent statutory provisions found in the schedule in § 176.11, subd. 3, provide that compensation shall be as follows:

"(1)  For the loss of a thumb, 66 2/3 per cent of the daily wage at the time of injury during 60 weeks;

"(2)  For the loss of a first finger, commonly called index finger, 66 2/3 per cent of the daily wage at the time of injury during 35 weeks;

"(3)  For the loss of a second finger, 66 2/3 per cent of the daily wage at the time of injury during 30 weeks;

"(4)  For the loss of a third finger, 66 2/3 per cent of the daily wage at the time of injury during 20 weeks;

"(5)  For the loss of a fourth finger, commonly called the little finger, 66 2/3 per cent of the daily wage at the time of injury during 15 weeks;

"(6)  The loss of the first phalange of the thumb, or of any finger, is considered equal to the loss of one-half of such thumb or finger, and compensation shall be paid at the prescribed rate during one-half the time specified for such thumb or finger;

"(7)  The loss of one and one-half or more phalanges is considered as the loss of the entire finger or thumb; provided, that in no case shall the amount received for more than one finger exceed the amount provided in this schedule for the loss of a hand;

*     *     *     *     *

"(39)  Where an employee sustains concurrent injuries resulting in concurrent disabilities, he shall receive compensation only for the injury which entitles him to the largest amount of compensation, but this does not affect * * * liability for the concurrent loss of more than one member, for which members compensations are provided in the specific schedule and in subdivision 5;"

It is plain that where in a single accident an employe suffers the concurrent loss of more than one finger the compensation for the

fingers lost is the aggregate of the number of weeks allowed by the schedule for each finger separately. The intention is that there shall be specific compensation according to the schedule for the loss of each finger and that the periods for payment thereof shall run consecutively. State ex rel. M. O. & S. F. Co. v. District Court, 136 Minn. 447, 162 N. W. 527. It is also plain that where there is a specific schedule for the compensation of loss of members or parts thereof the only compensation allowable is that specified in the schedule without additional allowance for disability therefrom, except for medical services to cure or remove some defect resulting from amputation. Sheldon v. Gopher Granite Co. 174 Minn. 551, 219 N. W. 867. In Lappinen v. Union Ore Co. 224 Minn. 395, 29 N. W. (2d) 8, we reiterated the rule of the Sheldon case so far as it related to the rule that the schedule of compensation for specific injuries controls and excludes other allowances, except where there is other physical injury which otherwise would not be compensated.

That these conclusions are in accord with the legislative intent is not only made clear, but is compelled by the proviso in subd. 3 (7) to the effect "that in no case shall the amount received for more than one finger exceed the amount provided in this schedule for the loss of a hand." The proviso clearly shows that the legislature understood the language thereof as meaning, unless expressly limited, that the compensation for the loss of more than one finger in a single accident might exceed the compensation for the loss of an entire hand—the aggregate for the loss of all fingers is 160 weeks and that for the hand, not including the wrist movement, is 150 weeks—and that the legislature intended that, while the compensation for the loss of more than one finger in a single accident should be the aggregate of the compensations provided for specific fingers, it should be, and accordingly was, so limited as not to exceed the compensation for the loss of a hand. King v. Davidson, 195 Mich. 157, 161 N. W. 841; George W. Helme Co. v. Middlesex Common Pleas, 84 N. J. L. 531, 87 A. 72. The Helme case was cited with approval in State ex rel. M. O. & S. F. Co. v. District Court, 136 Minn. 447, 162 N. W. 527, *supra*.

Under subd. 3(39), where an employe in a single accident sustains concurrent injuries other than concurrent loss of members specifically compensable as such according to the schedule under the rule stated, the employe is entitled to compensation only for the injury which would entitle him to the largest amount of compensation and not for the aggregate of each injury separately. Benson v. Winona Knights of Columbus, 189 Minn. 622, 250 N. W. 673; Jacobson v. Stone & Webster, 177 Minn. 589, 225 N. W. 895; Hellie v. American Railway Express Co. 157 Minn. 456, 196 N. W. 566.

In the Benson case, we held that where, in a single accident, an employe suffered multiple injuries which would be separately compensable if sustained separately, but which united to cause permanent total disability, the employe was entitled to compensation for permanent total disability.

In the Jacobson case, we held that where an employe sustained in a single accident concurrent loss of the foot, including the ankle movement, and 30 percent loss of use of the hand, including the wrist movement, for which the schedule allows 150 weeks' and 52½ weeks' compensation respectively, or a total of 202½ weeks, he was entitled to receive *only* the 202½ weeks' compensation according to the schedule.

In the Hellie case, we held that where the employe suffered concurrent permanent partial disability to a wrist and a vertebra, but which, combined, produced temporary total disability, he was entitled to compensation upon the basis of injury to his back as the one entitling him to the largest amount of compensation and not to compensation for injury to the wrist.

Cases like Olson v. Griffin Wheel Co. 218 Minn. 48, 15 N. W. (2d) 511, 156 A. L. R. 1338; State ex rel. Albert Lea Packing Co. Inc. v. District Court, 146 Minn. 283, 178 N. W. 594; State ex rel. The Broderick Co. v. District Court, 144 Minn. 198, 174 N. W. 826; and State ex rel. Kennedy v. District Court, 129 Minn. 91, 151 N. W. 530, not only do not compel a different result, but, on the contrary, support the conclusion here reached.

56

The Olson case holds that a leg injury complicated by infection of the employe's whole system which necessitated several amputations, resulting in permanent total disability, was compensable as one for permanent total disability under the catchall clause of § 176.11, subd. 5, as "any other injury which totally incapacitates the employee from working at an occupation which brings him an income constitutes total disability." The cited section is not involved here, and the injuries here do not come within its purview.

In the Albert Lea Packing Co. case, the employe suffered an impacted fracture of the upper end of the thigh bone which affected his hips and other parts of his body. Total disability resulted. We held that the employe was entitled to compensation for temporary total disability and not simply for disability resulting from the loss of the leg. We said (146 Minn. 285, 178 N. W. 594):

"* * * He has suffered more than the loss of the use of his leg. Its use is gone and up to the present time the rest of his body is useless for any working purpose. The condition of the fracture so affects his hips and other parts of his body and there is such attendant pain that he can remain sitting for no considerable length of time." (Italics supplied.)

In the Broderick case, there was not only loss of one finger and injury to another, but mangling and injury of the hand itself, with intervening infection. We held that the employe was entitled to compensation for injury to the hand as a whole and was not limited to that for the fingers. This accords with the intention of subd. 3(39) that the compensation in case of concurrent injuries shall be for the injury entitling him to the largest amount of compensation.

In the Kennedy case, we simply held that the employe was entitled to compensation for injury to the arm or the hand, depending on which it was, but not for both.

We think it is clear that where an employe sustains multiple injuries in a single accident, some of which are compensable under the schedule and the others are otherwise compensable, there is a unitary injury, of which the separate injuries are parts, and that the

compensation should be unitary for all the injuries as a whole, if that would entitle the employe to the largest amount of compensation; but the compensation awarded should not be the aggregate compensations for the separate injuries both under the schedule and otherwise under the act. For example, in the Broderick case, most heavily relied on here by the employe, there was not only loss of a finger, but injury to the hand itself by mangling and intervening infection. There, we treated the injuries as unitary to the hand as a whole, because only by so doing could the employe recover compensation for his entire injury, of which the loss of the finger and the injury to the hand were parts; but we did not hold that an award could be made consisting of the aggregate separate compensations for the loss of the finger and for the injury to the hand. In all cases, where there was loss of several fingers and separate injury to the hand also, compensation was allowed for the loss of use of the hand in order to give the employe the maximum compensation under the circumstances. Of course we have no such situation here, because in the instant case the injury consisted of the loss of fingers without injury to the hand.

Employe cites cases arising under statutes which differ from ours and which for that reason are not in point. Gross v. Hudson Reade Corp. 215 App. Div. 632, 214 N. Y. S. 449, and Berman v. Reliance Metal Spinning & Stamping Co. 187 App. Div. 816, 175 N. Y. S. 838, and other New York cases were decided under a statute expressly authorizing an award of compensation, where more than one finger was lost, based upon proportionate loss of use of the hand. See, Matter of Rounds v. Davis Furniture Co. 250 N. Y. 405, 165 N. E. 827.

North Beck Min. Co. v. Industrial Comm. 58 Utah 486, 200 P. 111, is not in point for the same reason as the New York cases, because it was decided under a statute which, while it is not as explicit as that of New York, was intended to achieve the same result. This is made clear in the opinion (58 Utah 494, 200 P. 114).

The case of In re Maranovitch, 65 Ind. App. 489, 117 N. E. 530, was decided under a statute which contained a provision evidently

intended to permit such an award and which was so construed. The Indiana statute contains no provisions comparable to the proviso in § 176.11, subd. 3(7), which, as we pointed out *supra*, clearly evinces that the legislative intent is as we have stated.

The case of Sims v. Consumers Bread Co. 125 Kan. 747, 265 P. 1114, is not in point, because there, as in the Broderick case (144 Minn. 198, 174 N. W. 826), the employe sustained not only loss of a finger, but separate injury also to the hand itself.

Furthermore, in none of the cases cited has there been an award where there was a loss of fingers and, in addition, a separate injury to the hand, which included the separate compensations provided in the schedule for loss of specific fingers and, in addition, separate compensation for the hand injury. In all of them the award was exclusively for loss of use of the hand, as in our Broderick case. But, as has been pointed out, under our statute an award for loss of the use of the hand is authorized in such cases only where there was separate injury to the hand and compensation therefor would give the employe the largest amount of compensation under the circumstances.

Our conclusion is that the commission erred in basing the employe's compensation during the healing period upon the wages he earned at the time of injury and in not basing it upon the weekly wage he would probably earn after arriving at legal age, if uninjured; and that otherwise its decision is according to law.

Relator is allowed $250 as attorney's fees.

Reversed in part and remanded for further proceedings in accordance with the opinion.