# ALICE K. DILLON v. CITY OF ST. PAUL.[1]

April 4, 1952.

No. 35,556.

[1]Reported in 52 N. W. (2d) 726.

*Lewis L. Anderson,* for relator.

*William M. Serbine,* Corporation Counsel, and *Marshall F. Hurley,* Assistant Corporation Counsel, for respondent.

MAGNEY, JUSTICE.

Certiorari to review a determination of the industrial commission awarding compensation to relator, the widow of John J. Dillon, deceased, a former fire department employe of the city of St. Paul. Dillon was injured in the course of his employment. Under § 52 of the home rule Charter of the City of St. Paul, the city was required to pay Dillon, during his lifetime, his full pay for the first six months and half pay for the next six months of his disability. After that he was entitled to receive the rate of compensation fixed by the workmen's compensation act of Minnesota.

Dillon, a captain in the St. Paul fire department, suffered an accidental injury on April 16, 1948, and died as a result of such injury on November 24, 1949. During the period of his disability from April 20, 1948, to October 19, 1948, the city paid him his full salary. From October 19, 1948, to April 19, 1949, it paid him one-half of his salary, and from April 19, 1949, to the date of his death, it paid him $27 per week under the workmen's compensation law. During his lifetime, the city paid Dillon a total of $3,309.27.

Before the industrial commission, the city contended that it was entitled to deduct from the compensation due the widow the total amount paid Dillon pursuant to the provisions of § 52 of the charter and of the compensation act during his lifetime. The widow contended that the only amount which could legally be deducted from the compensation due her was an amount equal to the compensation provided for by the compensation act.

The commission held that the widow is entitled to compensation at the rate of $24.50 per month from and after November 24, 1949, payments to continue during dependency, subject to the limitation

of $10,000, less, however, the amount of $3,309.27 paid to the employe prior to his death. The widow assigns as error its holding that the city is entitled to deduct from compensation due her the difference between $27 per week and the amount paid her deceased husband for the year from April 20, 1948, to April 19, 1949.

We have already referred to the charter provision involved. Certain applicable statutes must be considered in connection with § 52 of the charter. M. S. A. c. 176 is the workmen's compensation act, and § 176.11, subd. 6, thereof provides:

"In case a workman sustains an injury due to an accident arising out of and in the course of his employment, and during the period of disability caused thereby death results approximately therefrom, *all payments previously made as compensation* for such injury shall be deducted from the compensation, if any, due on account of the death, * * *." (Italics supplied.)

And § 176.01, subd. 8(1), reads:

"* * * where, in any city operating under a home rule charter, a mode and manner of *compensation* is provided by the charter which is different from that provided by this chapter, and the amount of compensation provided by the charter would, if taken thereunder, exceed the amount the employee is entitled to under this chapter for the same period, he shall, in addition to his compensation under this chapter, receive under the charter an amount equal to the excess in *compensation* provided by the charter over what he is entitled to by this chapter; * * *."[2] (Italics supplied.)

The commission determined that the payments made to Dillon under § 52 of the charter constituted compensation payments within § 176.11, subd. 6, and hence were deductible thereunder, and it

[2]With reference to this section, quoted in relator's brief, she states: "* * * It might have been argued prior to the adoption of the quoted provision that an injured fireman was entitled to receive both his salary and the statutory compensation, but it is clear that, by the adoption of that section, if such right did exist, it was taken from him."

thereupon ordered that the total amount of such payments be deducted.

A single question is thus presented: Are payments made to an injured fireman pursuant to § 52 of the charter, "payments previously made as compensation for such injury" and therefore, under M. S. A. 176.11, subd. 6, to be deducted from the compensation payable to the deceased fireman's dependents on account of his death?

In Markley v. City of St. Paul, 142 Minn. 356, 172 N. W. 215, it was argued by the city that the workmen's compensation act vitiated the force of the charter, and that an injured fireman could not legally receive the benefits of § 52 of the charter. The statute as it then stood did not prevent the city from paying compensation in addition to the compensation paid pursuant to the compensation statute. The court rejected the argument advanced by the city. The case did not decide whether payments under § 52 of the charter were or were not "compensation" within the terms of the statute, though the court did use the term "compensation" in referring to payments made under § 52. The court held, as the statute then provided, that the fireman could collect both workman's compensation and the city charter payments. A few weeks prior to the decision in the Markley case, the legislature, recognizing the situation, but of course not because of this decision, enacted L. 1919, c. 176. In § 1 of c. 176 it is provided:

"* * * The terms 'employe' and 'workman' * * * shall be construed to mean:

"(1) * * * nor shall it include any employe of a city operating under a home rule charter for whom a mode and manner of compensation is provided in said charter which is different from that provided by chapter 467, Laws of 1913, as amended."

It was obviously an enactment to prevent city employes from collecting twice. If the legislature had in mind such a provision as § 52, when it took the above action, it classified payments made under the charter as "compensation." Two years later, in Segale

v. St. Paul City Ry. Co. 148 Minn. 40, 180 N. W. 777, the question was again raised. This court there held that a fireman was within the provisions of the compensation act prior to the 1919 amendment, which removed firemen from the coverage of the act. The court treated the payments under § 52 of the charter as "additional compensation" and said (148 Minn. 41, 180 N. W. 778) :

"Independent of certain *compensatory provisions* of the charter of the city of St. Paul, applicable to policemen and firemen in the service of the city, the question of plaintiff's relation to the compensation act is controlled by the decisions in State [ex rel. City of Duluth] v. District Court of St. Louis County, 134 Minn. 26, 158 N. W. 790, and State [ex rel. City of Duluth] v. District Court of St. Louis County, 134 Minn. 28, 158 N. W. 791." (Italics supplied.)

The court held that the compensation provisions of the charter did not prevent the fireman from also receiving benefits under the compensation act prior to the 1919 amendment. In the Segale case, this court clearly recognized that payments equivalent to salary, provided for by § 52 of the charter, were compensation of the same kind and nature, directed to the same purpose, as payments required to be made under the workmen's compensation act. In the opinion, the court refers to the charter provision as granting (148 Minn. 42, 180 N. W. 778) "certain *specific relief* to injured firemen." (Italics supplied.) It also said that (148 Minn. 44, 180 N. W. 779) "the charter provisions must therefore be held, * * * as *additional relief,* in no way affecting the compensation act." (Italics supplied.) It is clear that this court has considered the payments made under § 52 of the charter as compensation for injury.

A new statute was enacted in 1921, namely, L. 1921, c. 82. It made provisions concerning policemen and firemen substantially the same as those presently in force.

The present statutory scheme is a compromise between the judicial construction of the provisions of the original act and the provisions of the 1919 act. The effect of the compromise is to limit the over-all cost to the city of compensation payments to (a) the pay-

ments required by the charter but no more, or (b) the minimum protection required by the workmen's compensation act.

· The fact that the payments made under § 52 of the charter are measured by the amounts of salary paid to the fireman before disability is in no way conclusive that the payment is salary and not "compensation" for the injuries received. As stated in Long v. Philadelphia, 150 Pa. Super. 631, 634, 29 A. (2d) 243, 245:

"* * * The payments to claimant, though measured by the amount of his former wages, was not made to him *as* wages; he earned nothing during the period but was paid under the ordinance to compensate him for his loss of earning power."

The charter provision was designed to give relief to an injured fireman and to place part of the social loss of his injury upon the city and upon the taxpayers in whose service the loss was sustained. It is neither a gratuity nor payment for services actually rendered. It is simply a recognition of the desirability of shifting loss from the individual to the persons who benefited by his engaging in an occupation in which he was injured. The same can be said of the workmen's compensation act. There is no difference in principle. See, Markley v. City of St. Paul, 142 Minn. 356, 358, 172 N. W. 215, 216, *supra*.

To hold that such payments are "salary" and not "compensation" would lead to a peculiar result if the workman had continued to live. His disability called forth the claim. If he was disabled he would be entitled to compensation.

The payments made pursuant to the charter provision are compensation for injury and loss of wage to injured firemen. The adoption of M. S. A. 176.01, subd. 8 (1), is a declaration of policy that a city shall not be obliged to bear the cost of compensation under its charter provisions, plus the cost of compensation under the compensation act. Section 176.11, subds. 6 and 1, and § 176.12, subd. 20, indicate a policy that the city's total liability shall be limited, and that the statutory provision that the "payments previously made as compensation" under § 176.11, subd. 6, shall include all

payments made as recompense for injury and consequent loss of wage to the injured employe, whether or not the payments are made pursuant to the compensation act or pursuant to other authority.

A correct interpretation of the applicable statutes is that credit should be given to the city for the payments made under the charter to the extent of the amount the injured workman would have been entitled to receive under the compensation act, and that the dependents of the injured workman should be permitted to retain the excess over that amount under § 176.01, subd. 8(1).

An attorney's fee of $250 is allowed.

Reversed and remanded with directions to proceed as herein indicated.

THOMAS GALLAGHER, JUSTICE (dissenting).

I am of the opinion that payments made to decedent here under § 52 of the St. Paul charter were not made as compensation, but rather as payments for salary or for services previously rendered; hence, that § 176.11, subd. 6, providing for the deduction of "compensation" payments, is inapplicable.

It is to be noted that the workmen's compensation act was enacted on October 1, 1913, subsequent to the adoption of the St. Paul charter. Accordingly, when § 52 came into effect, its provision for payments following injuries by city employes could not be viewed as compensation payments similar to those provided for in the subsequent compensation act. As the term "compensation" indicates, payments under the *act* were intended to *compensate* an injured employe or his dependents in the event of his death. Payments under the *charter* were not necessarily intended to have the same effect, since it is obvious that in many instances an injury might extend far beyond the periods provided for in § 52. In Hanson v. Hayes, 225 Minn. 48, 50, 29 N. W. (2d) 473, 474, we limited the term "compensation" as used in the act to payments made "under the workmen's compensation act for injury, medical care, and hospitalization."

It would seem to follow that the payments referred to in § 52 were not affected by the subsequent enactment of § 176.01, subd. 8, which relates to *compensation* payments provided for in a city charter. Section 52, as clearly indicated by its language, does not cover or relate to *compensation* payments as such, and there is no reference therein to the term "compensation." The temporary "full pay" and "one-half pay" requirements extending for a brief period can scarcely be regarded as compensation payments as contemplated by the workmen's compensation act for disabilities which, in many cases, might extend over a long period of time.

Our decision in Markley v. City of St. Paul, 142 Minn. 356, 172 N. W. 215, upon which the commission based its decision, is not to the contrary. There we stated (142 Minn. 358, 172 N. W. 216) :

"The theory of the compensation act includes the idea that the wage earner ought not to be required to bear the whole result of a personal injury arising out of and in the course of his employment, and that the community ought to share in the loss. The carrying of this theory into practical effect, the subject of which is one of public policy, must necessarily be committed to the legislature for governmental control. But such provision will not prevent a city operating under a home rule charter from providing additional compensation to a fireman injured in the course of his employment. Nor is a charter so providing inconsistent with the object of the compensation act. It follows that section 52 of the charter in question was not repealed but remains in force."

While in this decision the term "compensation" is used in reference to § 52 of the charter, there is nothing therein which compels the conclusion that this court intended to construe the "full pay" and "one-half pay" salary payments provided for in § 52 as identical with, correlated to, or in lieu of the compensation payments provided for under the workmen's compensation act.

In Segale v. St. Paul City Ry. Co. 148 Minn. 40, 42, 180 N. W. 777, 778, likewise involving § 52 of the charter, the payments provided therein are not designated as compensation, but rather as "relief granted by the city." Further, it is significant that other

parts of § 52 make provision for payments of *"salary"* for "disability through injury or sickness" *not connected with employment*— quite distinctive from payments for compensation for injuries received in employment such as are provided for under workmen's compensation legislation.

Considering the extrahazardous nature of the occupation involved, it would seem that § 52 of the charter was in the nature of an inducement to prospective employes, and that the extra payments provided for therein constituted compensation for the *hazardous* services which would be rendered rather than for any injuries received while in such service. Under such circumstances, I do not believe that payments made under § 52 bear any relationship to the deductions provided for in § 176.11, subd. 6, or § 176.01, subd. 8(1).

LORING, CHIEF JUSTICE (dissenting).

I concur in the views expressed by Mr. Justice Thomas Gallagher.

---

[1]Reported in 52 N. W. (2d) 721.